UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUTLER PROPCO, LLC,
a Delaware limited liability company,   Case No. 2021_____
                                        Hon.
       Plaintiff,                       Maj. Judge

v.

CJ AUTOMOTIVE INDIANA, LLC,
an Indiana limited liability company,

       Defendant.

_____

PLUNKETT COONEY
Matthew J. Boettcher (P40929)
Attorneys for Plaintiff
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 901-4035
mboettcher@plunkettcooney.com

_____

**COMPLAINT FOR SPECIFIC PERFORMANCE AND
OTHER LEGAL AND EQUITABLE RELIEF**

Plaintiff, Butler Propco, LLC ("Plaintiff"), by its attorneys, Plunkett Cooney, for its Complaint against Defendant, CJ Automotive Indiana, LLC ("Defendant"), states:

## THE PARTIES

1. Plaintiff is a limited liability company. Plaintiff's members are Jonathan Fine and Tesael Investments II, LLC. Mr. Fine is domiciled in the State of New York. The sole member of Tesael Investments II, LLC is Jaime Ellstein. Mr. Ellstein is domiciled in Mexico and the State of Florida. Accordingly, for diversity purposes Plaintiff is deemed a citizen of New York, Mexico and Florida.

2. Defendant is a limited liability company. Upon information and belief, Defendant's sole member is CJ Automotive USA, Inc., which is a Delaware corporation with its principal place of business located in Indiana. Accordingly, for diversity purposes Defendant is a citizen of Delaware and Indiana.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. 1332 as there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. In addition, Plaintiff is seeking declaratory relief and specific performance of an agreement to buy and sell real estate and other property. This Court has the authority to declare the parties' rights under 28 U.S.C. 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

5. Venue is proper in this District under 28 U.S.C. 1391(b)(2) as a substantial part of the events giving rise to the claims pled occurred in this District.

## FACTUAL ALLEGATIONS

6. On May 18, 2021, Plaintiff and Defendant signed a Letter of Intent to begin memorializing their agreement through which Plaintiff was purchasing certain real property located in Butler, Indiana (the "Land").

7. In addition, Plaintiff agreed to purchase various improvements and appurtenances located on or pertaining to the Land.

8. The sale and purchase contemplated by the Letter of Intent also included Plaintiff's purchase of certain "Personal Property," "Contracts," "Permits," "Warranties" and "Plans."

9. The Land, Improvements, Appurtenances, Personal Property, Contracts, Permits, Warranties and Plans that are part of the sale and purchase are hereafter referred to as the "Property."

10. Beginning on or about May 25, 2021, draft copies of a "Contract of Purchase and Sale" and "Commercial Lease Agreement" were delivered by Defendant to Plaintiff.

11. Between June 7 and 25, 2021, the parties, through their counsel, negotiated over the terms of the Contract of Purchase and Sale.

12. On June 25, 2021, the parties signed the Contract of Purchase and Sale to sell and purchase the Property. *See*, **Exhibit A**.

13. The "Effective Date" of the Contract of Purchase and Sale was June 25, 2021.

14. Paragraph 2.1 of the Purchase and Sale Agreement provides for a purchase price for the Property of $4,200,000.

15. As required by ¶3.1 of the Purchase and Sale Agreement, Plaintiff paid into escrow an "Earnest Money Deposit" of $150,000 which was to be held by the escrow agent and applied to the purchase price for the Property or disbursed in accordance with the Purchase and Sale Agreement.

16. The Contract of Purchase and Sale refers to a certain "Commercial Lease Agreement" (the "Lease").

17. As part of the sale and purchase of the Property Plaintiff also was to lease certain property from Defendant.

18. On or about June 18th through July 15, 2021, the parties were negotiating the terms of the Lease.

19. Paragraph 4.1 of the Contract of Purchase and Sale required Defendant to provide various documents demonstrating its title to the Property.

20. In addition, ¶5.1 of the Purchase and Sale Agreement provided Plaintiff with a 30-day "Inspection Period" during which Plaintiff was permitted to examine Defendant's Title Policy, Title Commitment, any Exception Documents, Existing Surveys and Submission Matters all as defined in ¶4.1, as well as any other documents, items and the Property itself.

21. On July 26, 2021, Plaintiff sent Defendant a title and survey objection letter listing issues to be addressed prior to a closing on the sale and purchase of the Property. *See*, **Exhibit B**.

22. By then the parties had conducted a Phase I environmental inspection but it could not conclusively show if the Land was environmentally contaminated. Accordingly, Plaintiff commissioned a more thorough Phase 2 environmental report which delayed completion of the Inspection Period.

23. Accordingly, and because of the various property issues that had by then been identified, on July 26, 2021, the parties also executed a "First

5

Amendment To Contract Of Purchase And Sale" thereby extending Plaintiff's Inspection Period until August 6, 2021. *See*, **Exhibit C**.

24. Even so, Plaintiff understood that the sale and purchase would proceed, and the parties scheduled a closing for August 16, 2021. *Id*.

25. On or about August 3, 2021, the parties' counsel were discussing the Property title issues including an easement needed to service the Land.

26. On or about August 5-6, 2021, Defendant's counsel contacted the City of Butler attempting to obtain the easement needed to service the Land.

27. By August 9, 2021, Defendant's counsel was assuring Plaintiff's counsel that he was continuing to work toward resolving the easement issue so that the sale and purchase could close as scheduled on August 16, 2021.

28. Further, as early as May 2021 Defendant had pointed out to Plaintiff during a tour of the Land that the roof on the building on the Land leaked. This condition was consistent with a property condition report earlier received calling for over $730,000 of roof repairs and replacements by 2022.

29. During the parties' discussions and negotiations Defendant had acknowledged that the roof repairs would be needed as part of the sale and purchase of the Property.

30. However, because of labor shortages stemming from the Covid-19 pandemic, and due in part to the isolated nature of the Land in Butler Indiana,

6

the first bid to repair the roof, from Landmark Roofing, was not obtained until July 30, 2021.

31. After receiving the Landmark Roofing repair quote, the parties continued discussing ways to resolve the remaining property issues prior to the scheduled closing.

32. In reliance on Defendant's representations, on Friday, August 13, 2021, Plaintiff's counsel prepared and sent to Defendant's counsel copies of the closing documents needed for the closing scheduled for August 16, 2021 including specifically (a) a Special Warranty Deed; (b) a Bill of Sale; (c) a Blanket Transfer and Assignment; (d) a Foreign Investment in Real Property Tax Act withholding document; (e) the Indiana Sale Disclosure forms, (f) the Commercial Lease Agreement; and (g) a Commercial Lease Guaranty.

33. As of August 13th, Defendant expressed no objection to proceeding to a closing asserting only that "[w]e reviewed the most recent proposal and our position remains that this is a late change and we do not accept any changes from the agreement and have now missed the possibility to close as agreed on Monday August 16 as previously agreed." *See*, **Exhibit D**.

34. The sale and purchase did not close on August 16, 2021.

35. As of August 16, 2021, Defendant had not signed and returned any of the closing documents needed to complete the sale of the Property.

7

36. As of August 16, 2021, Plaintiff was ready, willing and able to close on the sale and purchase of the Property.

37. That same day Jonathan Fine, on Plaintiff's behalf, wrote to Ray Bomya, for Defendant, stating that Plaintiff was willing to close despite the open issues of the easement servicing the Land and the leaking building roof:

> It was great speaking with you earlier. As we discussed, our side was prepared to close today and would like to ensure that a closing happens as soon as possible. . . I also want to reemphasize that we are ok with legal issues such as neighboring easements be resolved post-closing in order to make sure that you are accessing liquidity as soon as possible. Our priority has always been to close with you promptly under terms that you feel are fair and reasonable. Your attorney has received all of the applicable closing documents in order to prepare for what could have been closed today. We are ready to wire once the lease has been signed and Tony confirms the settlement statements.

*See*, **Exhibit E**.

38. As of August 16, 2021, Defendant was not claiming the Contract of Purchase and Sale had terminated. Instead, Defendant was acknowledging Plaintiff's intention to close and was merely seeking to delay the closing, stating, "I saw you tried to call. I am booked heavy today with meetings. We will need a day or so. We are evaluating what our next steps need to be from the Sweden side." *See*, **Exhibit F**.

39. Unknown to Plaintiff, on July 21, 2021, and in clear violation of ¶6.5 of the Contract of Purchase and Sale, Defendant had secretly obtained a

8

mortgage loan and encumbered the Land with a Commercial Mortgage. *See*, **Exhibit G**.

40. Accordingly, after July 21, 2021 Defendant was unable to close of the sale and purchase of the Property without triggering a due on sale clause in the mortgage encumbering the Land. Defendant also wrongfully withheld that information from Plaintiff.

41. Compounding its wrongful breach of the Contract of Purchase and Sale, Defendant concocted an excuse for its failure to close which it sent to Plaintiff on August 18, 2021 entitled "Notice of Termination." *See*, **Exhibit H**.

42. Citing ¶5.2 of the Contract of Purchase and Sale, Defendant wrongly attempted to justify its refusal to close insisting that weeks earlier Plaintiff did not "timely deliver to [Defendant] written notice of termination during the Inspection Period."

43. Put simply, Defendant is contending that despite working for weeks toward a closing on its Purchase of the Property Plaintiff had actually terminated the contract back on August 6th.

44. Defendant's reliance on ¶5.2 is legally and factually wrong, amounting to nothing more than a bald attempt to hide its own wrongful conduct and breach of the Contract of Purchase and Sale.

45. Paragraph 5.2 is a termination provision solely for Plaintiff's benefit. That paragraph provides only that:

> If Purchaser determines at any time prior to the expiration of the Inspection Period that the Property is not satisfactory to Purchaser for any reason or for no reason whatsoever in Purchaser's sole and absolute discretion, then Purchaser may terminate this Contract by delivering written notice of termination to Seller prior to the end of such Inspection Period. If Purchaser properly terminates this Contract pursuant to this Section 5.2, then this Contract shall be terminated, the Title Company shall return the Earnest Money Deposit to Purchaser upon the unilateral direction of Purchaser and notwithstanding any contrary direction from Seller, and neither party shall have any further rights, duties or obligations hereunder except with respect to the provisions of this Contract which expressly survive the termination of this Contract. If Purchaser does not timely deliver to Seller written notice of termination during the Inspection Period, the conditions of this Section 5.2 shall not be deemed satisfied, and Purchaser shall be deemed to terminate this Contract pursuant to this Section 5.2.

46. Paragraph 5.2 of the Contract of Purchase and Sale exists solely for Plaintiff's benefit and permits Plaintiff to terminate the Contract of Purchase and Sale should it decide not to proceed with the purchase in its "sole and absolute discretion."

47. Nothing in ¶5.2 permits Defendant to terminate the Contract of Purchase and Sale, for any reason.

48. After July 21st, Defendant was well aware that Plaintiff intended to close on the sale and purchase of the Property and that as of August 16th Plaintiff stood ready, willing and able to close.

## COUNT I – REQUEST FOR DECLARATORY RELIEF

49. Plaintiff incorporates by reference the preceding allegations of the Complaint.

50. The parties agreed to sell and purchase the Property under the terms of the Contract of Purchase and Sale.

51. Defendant's attempt to terminate the sale and purchase by invoking ¶5.2 while wrongful, it calls into question the parties' rights and obligations under Contract of Purchase and Sale.

52. Plaintiff stands ready to close on the sale and purchase of the Property under the terms of the Contract of Purchase and Sale, but Defendant has wrongfully refused insisting that Plaintiff terminated the contract on August 6, 2021.

53. An actual controversy exists over the parties' respective rights and obligations under the Contract of Purchase and Sale.

WHEREFORE, Plaintiff requests that the Court determine the parties' respective rights and obligations and grant the necessary relief as follows:

    A.    Determine that the Contract of Purchase and Sale remains valid and enforceable;

    B.    Conclude that Defendant's purported termination of the Contract of Purchase and Sale by invoking ¶5.2 is of no force or effect;

    C.    Order Defendant to proceed with the closing of the sale of the Property under the terms of the Contract of Purchase and Sale;

    D.    Award Plaintiff damages as supported by the facts and evidence in this case;

    E.    Award Plaintiff its costs and expenses incurred, including interest and attorney fees, in pursuing this matter as permitted under ¶10.3 of the Contract of Purchase and Sale; and

    F.    Award Plaintiff such other relief as the court deems just.

### COUNT II – SPECIFIC PERFORMANCE OF THE CONTRACT OF PURCHASE AND SALE

54.    Plaintiff incorporates by reference the preceding allegations of the Complaint.

55.    The parties agreed to the sale and purchase of the Property under the terms of the Contract of Purchase and Sale.

56.    Plaintiff stands ready, willing and able to close on the purchase of the Property, but Defendant has wrongfully refused.

57.   Defendant has intentionally breached the Contract of Purchase and Sale by its refusal to close on the sale and by its wrongful encumbering of the Land with a commercial mortgage.

58.   As a result of Defendant's breach of the Contract of Purchase and Sale and the damages Plaintiff will incur as result of Defendant's breach, the Contract of Purchase and Sale should be specifically enforced.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.   Ordering Defendant to proceed with the sale of the Property under the terms of the Contract of Purchase and Sale;

B.   Awarding Plaintiff damages as supported by the facts and evidence in this case;

C.   Awarding Plaintiff its costs and expenses incurred, including interest and attorney fees as permitted under ¶10.3 of the Contract of Purchase and Sale; and

D.   Awarding Plaintiff such other relief as the court deems just.

### COUNT III – BREACH OF CONTRACT

59.   Plaintiff incorporates by reference the preceding allegations of the Complaint.

60. Plaintiff and Defendant signed the Contract of Purchase and Sale whereby the parties agreed to sell and purchase the Property.

61. Defendant breached the Contract of Purchase and Sale by refusing to close on the sale and by wrongly encumbering the Land with a commercial mortgage without Plaintiff's knowledge or consent.

62. As a result of Defendant's breach Plaintiff is entitled to specific performance as requested in Count II.

63. As an alternative request for relief, Plaintiff is entitled to recover its damages as a result of Defendant's breach of contract.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

A. Ordering Defendant to proceed with the sale of the Property under the terms of the Contract of Purchase and Sale;

B. Awarding Plaintiff damages as supported by the facts and evidence in this case;

C. Awarding Plaintiff its costs and expenses incurred, including interest and attorney fees as permitted under ¶10.3 of the Contract of Purchase and Sale; and

D. Awarding Plaintiff such other relief as the court deems just.

                              PLUNKETT COONEY

                              BY: /s/ Matthew J. Boettcher
                              Matthew J. Boettcher (P40929)
                              Attorneys for Plaintiff
                              38505 Woodward Ave. Ste. 100
                              Bloomfield Hills, MI  48304
                              (248) 901-4035
Dated:  August 30, 2021      mboettcher@plunkettcooney.com

Open.28568.12720.27036968-1