# EXHIBIT G

**202004893**
**08/11/2020 09:51:31 AM**
**RECORDER OF DEKALB CO, IN**
**KATIE FIRESTONE**
**RECORDED AS PRESENTED**
**FEE AMOUNT: 55.00**

THE PAYMENT OF THE INDEBTEDNESS EVIDENCED BY THIS INSTRUMENT IS SUBORDINATED TO THE PAYMENT OF THE "SENIOR DEBT" DEFINED AND DESCRIBED IN THE SUBORDINATION AGREEMENT DATED JULY __, 2020, AMONG MERCEDES-BENZ U.S. INTERNATIONAL, INC., FIRST FINANCIAL BANK, FIRST FINANCIAL EQUIPMENT FINANCE, LLC, CJ HOLDINGS NORTH AMERICA, LLC, CJ AUTOMOTIVE INDIANA, LLC, AND CJ AUTOMOTIVE USA, INC., AND REFERENCE IS MADE TO THAT AGREEMENT FOR A FULL STATEMENT OF THE TERMS AND CONDITIONS OF SUCH SUBORDINATION. EACH HOLDER OF THIS INSTRUMENT, BY ITS ACCEPTANCE HEREOF, IS IRREVOCABLY BOUND BY THE PROVISIONS OF THE SUBORDINATION AGREEMENT.

## COMMERCIAL MORTGAGE

### THIS IS A FUTURE ADVANCE MORTGAGE

This mortgage (this "**Mortgage**") is made on July 21, 2020 (the "**Effective Date**"), between CJ AUTOMOTIVE INDIANA, LLC, an Indiana limited liability company ("**Mortgagor**"), of 100 Commerce Street, Butler, Indiana 46721-1367, and Mercedes-Benz U.S. International, Inc. ("**Lender**"), of c/o Burr & Forman LLP, 420 North 20th Street, Suite 3400, Birmingham, Alabama 35203, Attn: Derek F. Meek, on the terms and conditions set forth below.

    1.    **Definitions.** The following terms shall have the following meanings when used in this Mortgage:

    a.    "**Leases**" means and includes all leases and rental agreements (including, without limitation, oil and gas leases and any specific leases described in an attachment to this Mortgage), written or unwritten, now or later demising the Property in whole or in any part, and all amendments, modifications, extensions, renewals, substitutions, and replacements.

    b.    "**Letter Agreement**" means that certain Letter Agreement dated as of July __, 2020 between CJ Automotive Indiana, LLC, for themselves and their applicable affiliates (collectively, the "**Borrower**"), Lender, First Financial Bank, and First Financial Equipment Finance, LLC (the two First Financial entities are collectively called "**First Financial**").

    c.    "**Obligations**" means the obligation of Borrower (for which Mortgagor agrees to be jointly and severally liable) to repay the Loan, as that term is defined in the Letter Agreement, plus all interest accruing thereon, plus all costs, expenses and reasonable attorney fees that may be made or incurred by Lender in the collection of the Loan and enforcement of this Mortgage.

    d.    "**Property**" means the premises situated in the State of Indiana described in the attached Exhibit A, together with:

    i.    all the estate, title, interest, and rights of Mortgagor in the premises and all buildings, improvements, and fixtures of every kind and description now or later placed on the premises;

1

43833443 v1

   ii. all of Mortgagor's interest in all of the rents, profits, and leases of the premises and the tenements, hereditaments, easements, privileges, and appurtenances with respect to the premises, including earlier or later vacated alleys and streets abutting the premises;

   iii. all of Mortgagor's right, title, and interest in any and all awards or payments, including interest, and the right to receive them, that may be made with respect to the premises as a result of (A) the exercise of the right of eminent domain, (B) the alteration of the grade of any street, (C) any loss of or damage to any building or other improvement on the premises, or (D) any other injury to or decrease in the value of the premises; and

   iv. all of Mortgagor's rights, title, and interest in, to, and under all present and future land contracts, sales agreements, or option agreements relating to the premises and the proceeds thereof.

  2. **Grant of mortgage.** Mortgagor mortgages and warrants to Lender and its successors and assigns forever the Property and grants to Lender and its successors and assigns a continuing security interest in the Property to secure the timely repayment and performance of the Obligations, to have and to hold the Property, with all of the tenements, hereditaments, easements, appurtenances, and other rights and privileges belonging or in any manner now or appertaining, for the use and benefit of Lender on the conditions set forth below.

  3. **Future advances.** In the event Lender makes future advances to Borrower pursuant to the Letter Agreement, the future advances, and the interest on them, shall be secured by this Mortgage. Future advances shall not exceed $609,000.

  4. **Covenant to pay obligations.** Mortgagor, itself and/or through Borrower, shall promptly pay and perform all Obligations for which Mortgagor or Borrower is liable or obligated in accordance with the terms. Mortgagor agrees it is jointly and severally liable for the Obligations. Mortgagor acknowledges and agrees that this Mortgage shall not be extinguished and that the priority of this Mortgage shall not be altered in any way until a Mortgage discharge has been executed by Lender and recorded in the proper county.

  5. **Covenant of title.** At the time of the execution and delivery of this Mortgage, Mortgagor is the owner of the Property in fee simple, free of any easements, liens, and encumbrances (other than those easements and other matters of record as of the date of this Mortgage; the rights of the public in any part of the Property used or taken for road purposes; and any other mortgages, liens, or encumbrances to which Lender has consented in writing, hereinafter collectively referred to as "Permitted Encumbrances"), and will forever warrant and defend its title against any and all other claims. The lien created by this Mortgage is and will be kept as a valid lien on the Property, subject only to these Permitted Encumbrances.

  6. **Maintenance of property.** Mortgagor shall at all times preserve and maintain the Property in good repair and working order and condition and shall make all necessary improvements and repairs so the value and efficiency of the Property is at all times maintained and Lender's security is not impaired.

43833443 v2

2

7. **Payment of Taxes, Liens, and Insurance.** Mortgagor shall pay when due all taxes, assessments, and governmental charges levied on the Property and all claims, liens, encumbrances, levies, judgments, and charges that are at any time levied, recorded, placed on, or assessed against the Property and shall promptly deliver to Lender receipts evidencing such payment following Lender's written request therefor. However, Mortgagor will not be required to pay any tax, assessment, governmental charge, claim, lien, encumbrance, levy, judgment, or charge if Mortgagor is in good faith contesting the validity and has provided for payment of the entire amount of any contested tax, assessment, governmental charge, claim, lien, encumbrance, levy, judgment, or charge in a manner satisfactory to Lender.

8. **Insurance.**

a. Until the Obligations are fully satisfied, Mortgagor will keep the Property continuously insured against loss by fire; windstorm; and other hazards, casualties, and contingencies, including vandalism and malicious mischief, in whatever amounts and for whatever periods Lender reasonably requires. Mortgagor shall also maintain a policy or policies of rent loss insurance in an amount reasonably acceptable to Lender. Mortgagor shall pay promptly when due all premiums for this insurance and deliver to Lender, on request, receipts showing payment. All insurance shall be carried in companies approved by Lender, and the policies and renewals shall be held by and pledged to Lender (unless Lender directs or permits otherwise) as additional security and shall have attached a mortgagee clause acceptable to Lender, making all losses under the policies payable to Lender or its successors and assigns, as its or their interest may appear. In the event of loss or damage to the Property, Mortgagor shall give immediate notice in writing by mail to Lender, who may make proof of loss if not made promptly by Mortgagor.

b. If at any time the Property is identified by the director of the Federal Emergency Management Agency or any other person or entity designated with such responsibility under the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, and the National Flood Insurance Reform Act of 1994, all as amended (collectively, the Flood Act), as being in a flood hazard area, Mortgagor shall keep the Property covered by flood insurance in whatever amount Lender requires and in at least the amount required by the Flood Act and all regulations issued under it.

9. **Eminent domain.**

a. If the entire Property or a portion thereof is taken under the power of eminent domain, the entire award or payment in lieu of condemnation, to the full extent of the Obligations, shall be paid to Lender.

b. Application by Lender of any condemnation award or payment or portion to the Obligations shall not excuse, extend, or reduce the regularly scheduled payments due. Lender is empowered in the name of Mortgagor to receive and give acquittance for any such award or payment, whether it is joint or several. However, Lender shall not be held responsible for failure to collect any such award or payment, regardless of the cause of the failure.

10. **Removal of improvements.** Except for replacement, maintenance, and relocation in the ordinary course of business, Mortgagor shall not remove from the Property any improvement,

3

43833443 v1

accessions, or fixtures pertaining to or forming a part of the Property without Lender's prior written consent. All replacements shall be with improvements or fixtures of the same or better quality than those replaced.

11. **Compliance with law.** Mortgagor will comply promptly with all laws, ordinances, regulations, and orders of all public authorities having jurisdiction over the Property relating to its use, occupancy, and maintenance and shall, on request, promptly submit to Lender evidence of the compliance. Nothing shall be deemed to prohibit Mortgagor from contesting the enforceability or applicability of any law, ordinance, regulation, or order; however, Lender, in its sole discretion, may require that Mortgagor comply with any law, ordinance, regulation, or order during the pendency of any contest or appeals. Mortgagor will not permit the Property or any portion to be used for any unlawful purpose.

12. **Environmental warranties, compliance, and indemnification.** As used herein: the term "Hazardous Substance" shall mean any substance, material, or waste that is (a) included within the definitions of "hazardous substances," "hazardous materials," "hazardous waste," "toxic substances," "toxic materials," "toxic waste", or words of similar import in any Environmental Law, (b) listed as hazardous substances by the United States Department of Transportation or by the Environmental Protection Agency, or (c) petroleum, petroleum-related, or a petroleum by-product, asbestos or asbestos-containing material, polychlorinated biphenyls, flammable, explosive, radioactive, freon gas, radon, or a pesticide, herbicide, or any other agricultural chemical. The term "Environmental Law" shall mean any federal, state, or local law, rule, regulation, decision, policy, or guideline, pertaining to Hazardous Substances, or protection of the environment, and all present and future amendments thereto and shall include, without limitation, "Environmental Management Laws" as defined in Ind. Code § 13-11-2-71. Mortgagor represents and warrants to the Lender that (i) neither the Premises nor the Mortgagor are in violation of any Environmental Law applicable to the Premises, or are subject to any existing, pending, or threatened governmental investigation pertaining to the Premises, or are subject to any remedial obligation or lien under or in connection with any Environmental Law, and neither Mortgagor nor any tenant of the Premises has received notice of intention to hold a lien has may be imposed under Ind. Code § 13-25-4-12 et. seq. (ii) there is not the presence of nor has there been a release of Hazardous Substances in, on, or around any part of the Premises or the soil, groundwater, or soil vapor on or under the Premises, or the migration of any Hazardous Substance, from or to any other property in the vicinity of the Premises, and (iii) neither the Mortgagor's nor any tenant's intended future use of the Premises will result in the release of any Hazardous Substance in, on, or around any part of the Premises or in the soil, groundwater, or soil vapor on or under the Premises, or the migration of any Hazardous Substance from or to any other property in the vicinity of the Premises.

The Mortgagor shall neither use nor permit any third party to use, generate, manufacture, produce, store, or release, on, under, or about the Premises, or transfer to or from the Premises, any Hazardous Substance, except in compliance with all Environmental Laws, provided that if any such occurrence shall nevertheless happen, the Mortgagor shall promptly remedy such condition, at its sole expense and responsibility. The Mortgagor further shall otherwise comply or cause any tenant to comply with all Environmental Laws. The Mortgagor shall not permit any environmental liens to be placed on any portion of the Premises. The Mortgagor shall promptly notify the Lender in writing if (a) any of the representations and warranties herein are no longer accurate, (b) there may

4

be any Hazardous Substance in, on, or around the Premises or the soil, groundwater, or soil vapor on or under the Premises, or (c) any violation of any Environmental Law on or affecting or otherwise in respect of the Premises has occurred. The Lender and its agents shall have the right, and are hereby authorized, at any reasonable time to enter upon the Premises for the purposes of observing the Premises, taking and removing soil or groundwater samples, and conducting tests and/or site assessments on the Premises, or taking such other actions as the Lender deems necessary or advisable to clean up, remove, resolve, or minimize the impact of, or otherwise deal with, any Hazardous Substances on or affecting the Premises following receipt of any notice from any person or entity asserting the existence or possible existence of any Hazardous Substances pertaining to the Premises, that, if true, could jeopardize the Lender's security for the Obligations. All reasonable costs and expenses paid or incurred by the Lender in the exercise of any such rights shall be secured hereby and shall be payable by the Mortgagor upon demand.

The Mortgagor shall indemnify and hold the Lender harmless from, for and against any and all actions, causes of action, claims, liabilities, damages (including foreseeable and unforeseeable consequential damages), losses, fines, penalties, judgments, awards, settlements, and costs and expenses (including, without limitation, reasonable attorneys' fees, experts', engineers', and consultants' fees and costs and expenses of investigation, testing, remediation, and dispute resolution) (collectively referred to as "Environmental Costs") that directly or indirectly arise out of or relate in any way to: (a) Any investigation, cleanup, removal, remediation, or restoration work of site conditions of the Premises relating to Hazardous Substances; (b) Any resulting damages, harm, or injuries to the person or property of any third parties or to any natural resources involving Hazardous Substances relating to the Premises; (c) Any actual or alleged past or present disposal, generation, manufacture, presence, processing, production, release, storage, transportation, treatment, or use of any Hazardous Substance on, under, or about the Premises; (d) Any actual or alleged past or present violation of any Environmental Law relating to the Premises; (e) Any lien on any part of the Premises under any Environmental Law; or (f) Breach of any representation or warranty by or covenant of the Mortgagor herein. **The foregoing indemnity is expressly intended to include, and does include, any Environmental Costs arising as a result of any strict liability imposed or threatened to be imposed on the Lender in connection with any of the indemnified matters described in this Section or arising as a result of the negligence of the Lender in connection with such matters.** This indemnity shall continue in full force and effect and shall survive the payment and performance of the Obligations, the release of record of the lien or any foreclosure (or action in lieu thereof) of this Mortgage, the exercise by the Lender of any other remedy under this Mortgage or any other document or instrument evidencing or securing the Obligation, and any suit, proceeding, or judgment against the Mortgagor by the Lender hereon.

13. **Assignment of rents and leases.** As additional security for the Obligations and performance of the covenants and agreements set forth in this Mortgage, Mortgagor assigns to Lender and grants Lender a security interest in any oil and gas located in, on, or under the Property; any and all Leases of the Property; and all rents, issues, income, and profits derived from the use of the Property or any portion of it, whether due or to become due. These assignments shall run with the land and shall be good and valid against Mortgagor and all persons claiming by, under, or through Mortgagor from the date of recording of this Mortgage and shall continue to be operative during foreclosure or any other proceedings taken to enforce this Mortgage. If any foreclosure sale

5

results in a deficiency, the assignments shall continue as security during the foreclosure redemption period.

Mortgagor also covenants with and warrant to Lender that, as of the date of this Mortgage and for so long as any of the Obligations remains unpaid or unperformed:

      a.      Mortgagor shall promptly inform Lender of, assign, and deliver any Lease of the Property or any part and shall make, execute, and deliver to Lender, on demand, any documents, agreements, and instruments that, in Lender's opinion, may be necessary to protect Lender's rights under this Mortgage. Mortgagor's failure to do so will not impair Lender's interest in or rights with respect to any subsequent lease nor in any way affect the applicability of this Mortgage to the lease and the unpaid rents due or to become due.

      b.      Mortgagor shall not, without the prior written consent of Lender, (i) cancel or accept surrender of a Lease; (ii) modify or alter a lease in any way, either orally or in writing; (iii) reduce the amount of or postpone payment of any Lease rents; (iv) consent to any assignment of the lessee's interest in a lease or to any subletting; (v) collect or accept payment of rents under a Lease for more than one month in advance; or (vi) make any other assignment, pledge, encumbrance, or other disposition of a Lease or any Lease rents, issues, income, or profits.

Any of the above acts, if done without Lender's prior written consent, shall be null and void; and Mortgagor shall perform and discharge every obligation, covenant, and agreement required to be performed by the landlord under any lease and, if Mortgagor fails to do so, Lender, at Lender's sole option and without releasing Mortgagor from any the obligation, may perform or discharge them in the manner and to the extent Lender deems necessary to protect its rights and interests under this Mortgage. All costs, expenses, and sums paid by Lender in performing under any Lease, including reasonable attorney fees, shall be added to the Obligations secured by this Mortgage. This assignment of rents is given as collateral security only and will not be construed as obligating Lender to perform any of the covenants or undertakings required to be performed by Mortgagor under any Lease.

      14.      **Assignment of contracts and agreements.** Mortgagor assigns to Lender, as further security for the Obligations, Mortgagor's interest in all agreements, contracts (including contracts for the lease or sale of the Property or any portion), licenses, and permits affecting the Property. The assignment shall not be construed as a consent by Lender to any agreement, contract, license, or permit so assigned or to impose on Lender any obligations. Mortgagor shall not cancel or amend any of the agreements, contracts, licenses, or permits assigned by this section or permit any of them to terminate if they are necessary or desirable for the operation of the Property, except in the ordinary course of business, without first obtaining, on each occasion, Lender's written approval, such approval not to be unreasonably withheld, conditioned or delayed. This section shall not apply to any agreement, contract, license, or permit that terminates if it is assigned without the consent of any party other than Mortgagor or the issuer, unless the consent has been obtained or this assignment is ratified by the party or issuer; nor shall this section be construed as a present assignment of any agreement, contract, license, or permit that Mortgagor is required by law to hold to operate the Property for the purposes intended. Notwithstanding the forgoing to the contrary, Lender shall not be deemed to have assumed any obligation or liability under any such agreements,

6

contracts, licenses, and permits, unless Lender consents, in its sole and absolute discretion, to the assumption of such obligation or liability.

15. **Due on sale.** Lender, in making the loan secured by this Mortgage, is relying on the integrity of Mortgagor and its undertaking to maintain the Property. If Mortgagor should sell, transfer, convey or assign the Property or any right, title or interest in it, whether legal or equitable; voluntarily or involuntarily; by outright sale, deed, installment sale contract, land contract, contract for deed, or otherwise, then the Lender shall have the right at its sole option to declare all sums secured and then unpaid to be immediately due and payable even if the period for the payment has not then have expired, anything in this Mortgage or the Letter Agreement to the contrary notwithstanding, and to exercise all of its rights and remedies under this Mortgage. No sale of the Property and no forbearance or extensions by Lender of the time for payment of the Obligations or the performance of the covenants and agreements shall in any way operate to release, discharge, modify, change, or affect the lien of this Mortgage or the liability of Mortgagor or Borrower, if any, on the Obligations or for the performance, either in whole or in part.

16. **Secondary Financing.** Mortgagor will not, without the prior written consent of Lender, mortgage or pledge the Property as security for any other loan or obligation of Mortgagor; provided, however, that Lender's consent shall not be required to any modification or amendment of any prior mortgage existing on the Effective Date.

17. **Waste; Abandonment.** The Mortgagor shall not abandon the Property, commit or permit waste on the Property, or do any other act causing the Property to become less valuable. The Mortgagor will keep the Property in good order and repair and in compliance in all material respects with any law, regulation, ordinance, or contract affecting the Property and, from time to time, will make all needful and proper replacements so that all fixtures and improvements will at all times be in good condition, fit and proper for their respective purposes. The Mortgagor shall use and maintain the Property in conformance with all applicable laws, ordinances, and regulations. The Lender or its authorized agent shall have the right to enter upon and inspect the Property at all reasonable times.

18. **Remedies on default.** In the event any Obligation are outstanding following the maturity date of the Loan (as set forth in the Letter Agreement), or any default in the performance of any of the covenants, conditions, and agreements in this Mortgage and the continuance of such default for fifteen (15) days after receipt of written notice from Lender specifying such default, (each an "Event of Default"), Lender may, in addition to and not in lieu of or substitution for all other rights and remedies provided by law, take the following actions:

a. **Accelerate obligations.** Lender may, without notice, except as expressly required by law, declare the entire unpaid and outstanding principal balance of the Obligations, and all accrued interest, to be immediately due and payable in full and, at Lender's option, may bring suit for it and take any steps and institute any other proceedings that Lender deems necessary to enforce the Obligations and to protect the lien of this Mortgage.

b. **Mortgage Foreclosure**

i. Upon an Event of Default (after any applicable notice and cure period), Lender shall have the right to foreclose this Mortgage under the provisions of Indiana Code § 32-29-

7

43833443 v1

7-3 et seq., and Mortgagor agrees to pay all of Lender's costs and expenses, including reasonable attorney fees, which shall be added to the Obligations secured by this Mortgage. At any foreclosure sale held under these Indiana statutes, Mortgagor agrees that in its foreclosure sale bid price, Lender may deduct from the appraised value of the Property (A) a brokerage commission of not more than 10 percent of the Property value, (B) the unpaid balance of any mortgage or other liens that have priority over the lien of this Mortgage, and (C) the sum of all unpaid property taxes and assessments and insurance premiums due and to become due on the Property through the date when the foreclosure redemption period shall expire. Any foreclosure sale may, at the sole option of Lender, be made en masse or in parcels, any law to the contrary notwithstanding; and Mortgagor knowingly, voluntarily, and intelligently waives any right to require any foreclosure sale to be made in parcels or any right to select which parcels shall be sold. The proceeds of any foreclosure sale shall be applied, as Lender elects, to the payment of Lender's collection and other expenses, including reasonable attorney fees, and to the payment of the Obligations, with the surplus, if any, to Mortgagor or Mortgagor's successor in interest. Commencement of proceedings to foreclose this Mortgage in any manner authorized by law shall be deemed an exercise of Lender's option to accelerate the Obligations. After the date on which the maturity of the Obligations secured by this Mortgage has been accelerated, Lender acceptance of any amounts paid by Mortgagor less than the full unpaid principal balance of the Obligations plus accrued interest, late charges, and Lender's costs and expenses as described in this Mortgage shall not waive the default or acceleration but shall only be credited on the unpaid balance of the Obligations unless Lender specifically agrees in writing to waive any default or acceleration.

c. **Collection of Rents**

i. Upon the occurrence of an Event of Default, Lender shall have the right to enter into peaceful possession of the Property and to collect and receive all rents, issues, income, and profits from the Property; to terminate any tenancy; to maintain proceedings to recover rents or possession of any of the Property from any tenant or trespasser; to rent or lease the Property or any portion of it on such terms as Lender deems best; and to have all oil and gas royalties and any other income from the Property. Lender, in whatever order Lender in its sole discretion elects, may apply the proceeds of any rents, issues, profits, and income to (A) preservation, maintenance, or operation of the Property; (B) payment of taxes due on the Property; and (C) payment of the Obligations. Mortgagor irrevocably consents and agrees that the lessees under any Lease, on demand and notice from Lender of Mortgagor's Event of Default, shall be required to pay all rents, issues, profits, and income to Lender, without any obligation on the lessees to determine the actual existence of any default by Mortgagor. Upon the occurrence of an Event of Default, Lender may enter on the Property, by its officers, agents, or employees, to collect rents, issues and profits and to operate and maintain the Property; and upon the occurrence of an Event of Default, Mortgagor authorizes Lender in general to perform all acts necessary to operate and maintain the Property in the same manner and to the same extent that Mortgagor might. The entry and taking possession of the Property or any part of it by Lender may be made by actual entry and possession or by written notice served personally on or sent by certified mail to the last owner of the Property appearing in Lender's records, as the Lender elects, without further authorization or notice.

ii. In connection with Lender's right to possession of the Property on the occurrence of an Event of Default, as specified in the subsection above, Mortgagor acknowledges

that it has been advised that there is a significant body of caselaw in Indiana that purportedly provides that in the absence of a showing of waste of a character sufficient to endanger the value of the Property or other special factors, a mortgagor is entitled to remain in possession of the Property and to enjoy the income, rents, and profits during the pendency of foreclosure proceedings and until the redemption period expires, even if the mortgage documents expressly provide to the contrary. Mortgagor further acknowledges that it has been advised that Lender recognizes that the value of the security covered by this Mortgage is inextricably intertwined with the effectiveness of the management, maintenance, and general operation of the Property and that Lender would not make the loan secured by this Mortgage unless it could be assured that it would have the right to take possession of the Property to manage it or to control its management and to enjoy the income, rents, and profits immediately on the occurrence of an Event of Default under this Mortgage, notwithstanding that foreclosure proceedings may not have been instituted or may be pending or that the redemption period may not have expired. Accordingly, Mortgagor knowingly, intelligently, and voluntarily waives all right to possession of the Property from and after the occurrence of an Event of Default on demand for possession by Lender, and Mortgagor agrees not to assert any objection or defense to Lender's request or petition to a court for possession. The rights conferred on the Lender by this Mortgage have been agreed on before the occurrence of an Event of Default under this Mortgage, and the exercise by Lender of any such rights shall not be deemed to put Lender in the status of a mortgagee in possession. Mortgagor acknowledges that this provision is material to this transaction and that Lender would not make the loan secured by this Mortgage but for this section.

d. **Title reports.** Lender may procure mortgage foreclosure or title reports. Mortgagor covenants to pay to Lender all sums paid for such purposes with interest at the highest rate applicable to the Obligations, and the sums and the interest shall constitute a further lien on the Property.

e. **Appraisals and audits.** Lender may procure appraisals, environmental audits, and other investigations or analyses of the Property as Lender determines are required by regulatory or accounting rules, procedures, or practices or are otherwise be prudent or necessary. Mortgagor shall grant Lender free and unrestricted access to the Property for such purposes. Mortgagor covenants to pay immediately to Lender all sums paid for such purposes with interest at the highest rate applicable to the Obligations, and the sums and the interest shall constitute a further lien on the Property.

19. **Costs of legal proceedings.** Mortgagor shall pay Lender a reasonable attorney fee in addition to all other legal costs if Lender becomes a party, either as plaintiff or defendant, to any legal proceedings in relation to the Property or the lien created by this Mortgage; and those sums shall be secured by this Mortgage and be payable at the highest rate applicable to the Obligations.

20. **Books and records.** Mortgagor covenants and agrees to furnish to Lender promptly certificates of occupancy and whatever other books, records, documents, information, and statements pertaining to Mortgagor, the Property, its operations, and any guarantors that Lender requests. All books, records, and other information provided by Mortgagor shall be in a form that is acceptable to Lender, and all costs of providing them shall be borne entirely by Mortgagor.

21. **Security agreement and financing statements.** Mortgagor shall execute, acknowledge and deliver any further conveyances, documents, mortgages, and assurances that Lender reasonably requires for accomplishing the purposes of this Mortgage. On any failure of Mortgagor to do so, Lender may execute, record, file, rerecord and refile any documents for and in the name of Mortgagor, and Mortgagor irrevocably appoints Lender as agent and attorney-in-fact of Mortgagor for those purposes. This document is intended by the parties to be, and shall be construed as, a security agreement, as that term is defined and used in the Indiana Uniform Commercial Code, as amended, and shall grant to Lender a security interest in Mortgagor's fixtures. For purposes of the Indiana Uniform Commercial Code, (a) Mortgagor is the *debtor*, (b) Lender is the *secured party*, (c) information concerning the security interest created by this Mortgage may be obtained from Lender at its address set forth on page 1, and (d) Mortgagor's mailing address is that set forth on page 1.

22. **Nonlender Liens; insolvency proceedings.** If any nonlender mortgage foreclosure proceeding or any federal, state, or local tax lien, seizure, levy, forfeiture, or any other lien proceeding is instituted, recorded, or filed against the Property that is not discontinued, reserved for in cash in an amount and manner satisfactory to Lender, or bonded by a company satisfactory to Lender within 30 days after initiation, recording, or filing; if any insolvency or receivership proceedings, either voluntary or involuntary, are instituted by or against Mortgagor for the liquidation or rehabilitation of Mortgagor's assets and affairs; or if any criminal proceedings are initiated in which forfeiture of the Property is a potential penalty, Lender may, at its option and without notice, declare the entire Obligations to be immediately due and payable and may institute whatever proceedings, including foreclosure of this Mortgage, Lender deems necessary to protect its interest in the Property.

23. **Prior mortgage.** Lender may, at Lender's sole option but without obligation to do so, cure any default by Mortgagor in any indebtedness or other agreement secured by any prior mortgage as Lender deems necessary to protect Lender's mortgage lien, assignments, and security interests under this Mortgage; and all moneys advanced by Lender and all costs incurred in effecting any such cure, including reasonable attorney fees, shall be added to the Obligations secured by this Mortgage. Mortgagor shall not be required to make monthly payments under this Mortgage for the payment of taxes, assessments, and insurance premiums if the prior mortgage requires the payment and the prior mortgagee maintains a reserve fund that, in Lender's opinion, is adequate for the payment of all taxes, assessments, and insurance premiums due and to become due on the Property. Mortgagor consents and agrees that Lender may contact any prior mortgagee or other lienor at any time to obtain the payment status, unpaid balance, copies of any documents, and agreements pertaining to Mortgagor or the Property and any other information Lender deems advisable.

24. **Suretyship waivers.**

    a. This Mortgage secures an obligation of payment and not of collection, and Mortgagor agrees that Lender's recourse on this Mortgage shall be immediate at any time after the Obligations or any part of them have not been paid when due (whether by acceleration or otherwise) or after Mortgagor has defaulted or otherwise failed to perform when due any of its obligations, covenants, representations, or warranties to Lender (after any applicable notice and cure period). Lender's rights under this Mortgage shall not be contingent on the exercise or enforcement by

10

Lender of whatever remedies it may have against Mortgagor or others or on the enforcement of any other lien or realization on any other security or collateral Lender may at any time possess. Any one or more successive or concurrent actions may be brought against Mortgagor either in the same action, if any, brought against Mortgagor or in separate actions, as often as Lender, in its sole discretion, deems advisable. No election to proceed in one form of action or proceeding, against any party, or on any obligation shall constitute a waiver of Lender's right to proceed in any other form of action or proceeding or against other parties unless Lender has expressly waived the right in writing. Specifically, but without limiting the generality of the above, no action or proceeding by Lender against Mortgagor under any document or instrument evidencing or securing the Obligations shall serve to diminish the rights of Lender under this Mortgage, except to the extent that Lender realizes payment by the action or proceeding.

b. The obligations of Mortgagor under this Mortgage shall in no way be affected or impaired by:

i. any amendment, alteration, extension, renewal, waiver, indulgence, or other modification of the Obligations;

ii. any settlement or compromise in connection with the Obligations;

iii. any subordination of payments under the Obligations to any other debt or claim;

iv. any substitution, exchange, release, or other disposition of all or any part of any collateral for the Obligations;

v. any failure, delay, neglect, act, or omission by Lender to act in connection with the Obligations;

vi. any advances for the purpose of performing any covenant or agreement of Mortgagor or curing any breach;

vii. the filing by or against Mortgagor of bankruptcy, insolvency, reorganization, or other debtor's relief afforded Mortgagor pursuant to the present or future provisions of the Bankruptcy Code or any other state or federal statute or by the decision of any court; or

viii. any other matter whether similar or dissimilar to the above.

The obligations of Mortgagor are unconditional, notwithstanding any defect in the genuineness, validity, regularity, or enforceability of the Obligations or any other circumstances that might otherwise constitute a legal or equitable discharge or defense of a surety, Borrower or Mortgagor.

c. Mortgagor waives every defense that, under principles of suretyship law or otherwise, would otherwise operate to impair or diminish the Mortgagor's liability or Lender's rights under this Mortgage, including, without limitation,

11

43833443 v1

    i. notice of acceptance of this Mortgage and of creations of Obligations to Lender;

    ii. any subrogation to Lender's rights against Mortgagor or Borrower until the Obligations have been paid in full;

    iii. presentment and demand for payment of any Obligations;

    iv. protest, notice of protest, and notice of dishonor or default to Mortgagor or Borrower or to any other party with respect to any of the Obligations;

    v. all other notices to which Mortgagor or Borrower might otherwise be entitled;

    vi. any demand for payment under this Mortgage;

    vii. any defense arising by reason of any disability or other defense of Mortgagor or Borrower by reason of the cessation from any cause whatsoever of the liability of Mortgagor or Borrower;

    viii. any rights to extension, composition, or otherwise under the Bankruptcy Code or any amendments or under any state or other federal statute; and

    ix. any right or claim or claim of right to cause a marshalling of Mortgagor's or Borrower's assets.

No notice to or demand on Mortgagor shall be deemed to be a waiver of Mortgagor's or Borrower's obligations or of Lender's right to take further action without notice or demand.

  25. **Binding effect.** Until this Mortgage is discharged in full, all of the covenants and conditions shall run with the land, shall be binding on the successors and assigns of Mortgagor and Borrower, and shall inure to the benefit of the successors and assigns of Lender. Any reference to "Mortgagor," "Borrower" or "Lender" shall include their respective successors and assigns.

  26. **Notices.** All notices, demands, and requests required or permitted to be given to Mortgagor or by law shall be deemed delivered when deposited in the U.S. mail, with full postage prepaid, addressed to Mortgagor at the last address of Mortgagor on the records of Lender.

  27. **No waiver.** No waiver by Lender of any right or remedy granted shall affect or extend to any other right or remedy of Lender or affect the subsequent exercise of the same right or remedy by Lender for any further or subsequent Event of Default; and all such rights and remedies of Lender are cumulative. Time is of the essence.

  28. **Severability.** If any provision of this Mortgage conflicts with any statute or rule of law of the State of Indiana or is otherwise unenforceable for any reason, it shall be deemed null and void to the extent of the conflict or unenforceability but shall be deemed separable from and shall not invalidate any other provisions of this Mortgage.

This Mortgage was signed and delivered by Mortgagor on the Effective Date stated in the first paragraph.

MORTGAGOR:

CJ AUTOMOTIVE INDIANA, LLC, an Indiana limited liability company,

By: /s/ R. Bomya

Name: RAYMOND BOMYA

Title: PRESIDENT & CEO


STATE OF Michigan )
Wayne COUNTY )

Acknowledged before me in Wayne County, Michigan, on July 23, 2020, by Raymond Bomya, the President + CEO of CJ AUTOMOTIVE INDIANA, LLC, an Indiana limited liability company, on behalf of the company.

/s/ Rachel Bomya

Print: Rachel Bomya

Notary Public, State of Michigan, County of Wayne.

My commission expires: 11/17/2024.

If acting in a county other than county of commission: Acting in the County of _____.


RACHEL MARIE BOMYA
NOTARY PUBLIC-STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires November 17, 2024
Acting in the County of Wayne

13

43833443 v2

WITNESS:

By: _____
Witness
Printed: Darlene Donya

STATE OF __Michigan__

COUNTY OF __Wayne__

I, __Rachel Marie Bomya__, a Notary Public of __Wayne__ County, State of __Michigan__, certify that __Darlene Brown__ personally appeared before me this day and executed the foregoing.

Witness my hand and official seal, this __23__ day of __July__, 2020.

[Affix Notarial Stamp or Seal]

Notary Public: _____
Printed Name: Rachel Marie Bomya
My Commission Expires: 11/17/2024

RACHEL MARIE BOMYA
NOTARY PUBLIC-STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires November 17, 2024
Acting in the County of Wayne

4583443 v2

14

Drafted by and when recorded return to:

Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203, Attn: Derek F. Meek

*I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law. ~Derek F. Meek, Attorney at Law*

15

43833443 v1

EXHIBIT A

That certain property located in DeKalb County, Indiana as more particularly described as follows:

Parcel 1:

A part of the Northwest Quarter of Section (11), Township 34 North, Range 14 East, in said County and State, bounded by a line commencing at a point 437 feet West of the Northeast corner of the East Half of the Northwest Quarter of Section 11, as aforesaid, and running from thence South 1,055 feet to the North Boundary line of the right of way of the Lake Shore and Michigan Southern Railway Company (now the New York Central Railroad Company); thence in a Westerly direction, along the North boundary line of said tract, 459.06 feet; thence North on a line parallel with the East Boundary line of said tract, 1037.02 feet to the North Boundary line of said Northwest Quarter as aforesaid; thence East along the North boundary line of said Northwest Quarter 459.06 feet to the place of beginning.

Parcel 2:

Lot Numbered Nine (9) in G. T. John's Addition to the Town, now City of Butler, DeKalb County, Indiana.

Parcel 3:

Commencing at a point on the North line of Section Eleven (11), Township 34 North, Range 14 East and on the center line of U.S. Highway #6, this point being 1,413 feet East of the Northwest corner of said Section 11; thence South 00 degrees 30 minutes West 1,023.9 feet; thence South 87 degrees 30 minutes East 331.8 feet, thence North 1037.02 feet to a point on the North line of said Section 11, and the center line of U.S. #6; thence West 308 feet to the place of beginning.

[PARCEL IDS 23-07-11-126-002; 23-07-11-126-003; 23-07-11-127-009]