UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUTLER PROPCO, LLC,
a Delaware limited liability company,

            Plaintiff,

v.

CJ AUTOMOTIVE INDIANA, LLC,
an Indiana limited liability company,

            Defendant.

Case No. 2:21-cv-12013
Hon. Laurie J. Michelson
Maj. Judge Elizabeth A. Stafford

---

PLUNKETT COONEY
Matthew J. Boettcher (P40929)
Attorneys for Plaintiff
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 901-4035
mboettcher@plunkettcooney.com

PAESANO AKKASHIAN APKARIAN,
P.C.
Brian M. Akkashian (P55544)
Anthony R. Paesano (P60173)
Alec M. Torigian (P81909)
Attorneys for Defendant
7457 Franklin Road, Ste. 200
Bloomfield Hills, MI 48301
(248) 792-6886
bakkashian@paalawfirm.com
apaesano@paalawfirm.com

---

**PLAINTIFF'S RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS**

## STATEMENT OF ISSUES PRESENTED

Whether Defendant's motion to dismiss should be denied because Plaintiff has stated plausible claims for declaratory relief and breach of contract?

Plaintiff answers:  Yes

## CONTROLLING OR MOST PERSUASIVE AUTHORITIES

**A.     Standard of Review**

Fed.R.Civ.P. 12(b)(6)

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988)

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998)

*Ashcroft v. Iqbal*, 556 U.S. 662; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009)

**B.     The motion to dismiss should be denied because the Contract of Purchase and Sale did not automatically terminate on August 6th.**

28 U.S.C. 2201

Fed.R.Civ.P. 57

*First Federal Savings Bank of Indiana v. Key Markets*, 559 N.E.2d 600 (Ind.

1990)

*Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91 (Ind. App. 1999)

*Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833 (Ind. App. 2017)

*T–3 Martinsville, LLC v. U.S. Holding, LLC*, 911 N.E.2d 100 (Ind. App. 2009)

*Prell v. Trustees of Baird and Warner Mortgage and Realty Investors*, 179 Ind.

App. 642; 386 N.E.2d 1221 (1979)

*Indiana-American Water Co., Inc. v. Town of Seelyville*, 698 N.E.2d 1255 (Ind.

App. 1998)

*Hinc v. Lime-O Sol Co.*, 382 F.3d 716 (7th Cir. 2004)

**C.**     **Questions of fact exist as to whether the Contract of Purchase and Sale should be specifically enforced**.

*Kesler v. Marshall*, 792 N.E.2d 893 (Ind. App. 2003)

*SCI Indiana Funeral Servs., Inc. v. D.O. McComb & Sons, Inc.*, 820 N.E.2d 700

(Ind. App. 2005)

*Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805 (Ind. 2009)

*Jetz Serv. Co., Inc. v. Ventures*, 165 N.E.3d 990 (Ind. App. 2021)

*Weaver v. American Oil Co.*, 257 Ind. 458; 276 N.E.2d 144 (1971)

*Brown v. Indiana Dept. of Cons.*, 140 Ind. App. 638; 225 N.E.2d 187 (1967)

*Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760 (Ill. App. 2003)

*Ochoa v. Ford*, 641 N.E.2d 1042 (Ind. App. 1994)

*Rauch v. Shots,* 533 N.E.2d 193 (Ind. App. 1989)


**D.**     **The facts as pled establish that Defendant breached the Contract of Purchase and Sale**.

*Morris v. Crain*, 71 N.E.3d 871 (Ind. App. 2017)

*Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165 (Ind. App. 2007)

*State v. International Business Machines Corp.*, 51 N.E.3d 150 (Ind. 2016)

**E.**     **The facts as pled do not establish as a matter of law that Plaintiff committed the first material breach of the Contract of Purchase and Sale**.

*L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031 (Ind. App. 2012)

*Indiana Hotel Equities, LLC v. Indianapolis Airport Authority*, 122 N.E.3d 901

(Ind. App. 2019)

*HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846

N.E.2d 318 (Ind. App. 2006)

**F.      The recording of Defendant's mortgage in 2020 does not justify
             terminating the Contract of Purchase and Sale**.

Fed.R.Civ.P. 12(f)

## LOCAL RULE CERTIFICATION

I, Matthew J. Boettcher, certify that this document complies with Local Rule 5.1(a), including:  double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ Matthew J. Boettcher

## I.  INTRODUCTION

Plaintiff, Butler Propco, LLC, has filed a three-count complaint.  In Count I, Plaintiff asks the Court to declare the parties' rights and obligations under a written "Contract of Purchase and Sale" covering various real and personal property Plaintiff contracted to buy from Defendant, CJ Automotive Indiana, LLC.  In Count II, Plaintiff seeks to specifically enforce the Contract of Purchase and Sale after Defendant refused to close.  In Count III, Plaintiff seeks damages stemming from Defendant's refusal to complete the sale.

Defendant contends the entire Complaint should be dismissed for failing to state a plausible claim under Rule 12(b)(6) because:

1.      if you construe the Contract of Purchase and Sale in Defendant's favor it terminated on August 6, 2021, despite the parties continuing to work towards a closing up until August 16th;

2.      despite the existence of the signed Contract of Purchase and Sale resulting in the exchange of closing documents on August 13th, there was no contract as there was never a meeting of the minds;

3.      despite the exchange of closing documents on August 13th for the closing on August 16th, and despite Defendant's insistence that the contract terminated on August 6th, the Court should conclude that Plaintiff was the first to breach the Contract of Purchase and Sale; and

4.      although Defendant's mortgaging of the real estate to be sold was not pled as a cause of action, the Court nonetheless should find as a matter of fact that Defendant did not conceal the mortgage and dismiss any claim pertaining to the mortgage.

Defendant is wrong at every turn.  Plaintiff has pled plausible claims throughout the Complaint and the motion to dismiss should be denied.

## II.  STATEMENT OF FACTS[1]

### A.      The Contract of Purchase and Sale

On May 18, 2021, Plaintiff and Defendant signed a Letter of Intent to begin memorializing their agreement through which Plaintiff would be purchasing certain real property located in Butler, Indiana (the "Land"). Comp. at ¶ 6.  In addition, Plaintiff agreed to purchase various improvements and appurtenances located on or pertaining to the Land.  *Id*. at ¶ 7.  Plaintiff also was to purchase certain other "Personal Property," "Contracts," "Permits," "Warranties" and "Plans."  *Id*. at ¶ 8.  The Land, Improvements, Appurtenances, Personal Property, Contracts, Permits, Warranties and Plans to be bought and sold are referred to here as the "Property."  *Id*. at ¶ 9.

---

[1] Unless otherwise stated, the facts are taken from the Complaint and identified as "Comp. at ¶ ___".

Beginning on May 25, 2021, Plaintiff sent Defendant draft copies of a "Contract of Purchase and Sale" and "Commercial Lease Agreement." *Id.* at ¶ 10.  Between June 7 and 25, 2021, the parties and their retained counsel negotiated the terms of the Contract of Purchase and Sale. *Id.* at ¶ 11.  By June 25, 2021, the parties each had signed the Contract of Purchase and Sale thereby agreeing to sell and purchase the Property. *Id.* at ¶ 12; *see also*, **Exhibit A** to the Complaint.[2]

Paragraph 2.1 of the Purchase and Sale Agreement provides for a $4,200,000 purchase price for the Property. *Id.* at ¶ 14.  As required by ¶3.1, Plaintiff paid into escrow an "Earnest Money Deposit" of $150,000 which was to be held by the escrow agent and later applied to the purchase price or disbursed in accordance with the Purchase and Sale Agreement. *Id.* at ¶ 15.

### B.    The due diligence preceding the scheduled closing

As is typical in commercial transactions of this type, the contract provided a period for the buyer's due diligence review of the Property.  To assist in that due diligence, ¶ 4.1 required Defendant to provide Plaintiff various documents demonstrating its title to the Property. *Id.* at ¶ 19.  In

---

[2] The Contract of Purchase and Sale refers to a "Commercial Lease Agreement" (the "Lease"). *Id.* at ¶ 16.  As part of the sale Plaintiff also was to lease certain property back to Defendant. *Id.* at ¶ 17.  Between June 18th and July 15, 2021, the parties were negotiating the terms of the Lease. *Id.* at ¶ 18.

addition, ¶5.1 provided Plaintiff with a 30-day "Inspection Period" during which Plaintiff could examine the Title Policy and Commitment, any Exception Documents, Existing Surveys and Submission Matters all as defined in ¶4.1, as well as any other documents, items and the Property itself.  *Id*. at ¶ 20.

Also as is common in the sale of commercial property, on July 26, 2021, Plaintiff sent Defendant a title and survey objection letter listing certain issues to be resolved prior to a closing.  *Id*. at ¶ 21; *see also*, **Exhibit B** to the Complaint.  By then the parties had conducted a Phase I environmental inspection but it did not rule out environmental contamination.  Accordingly, Plaintiff commissioned a more thorough Phase 2 report delaying the completion of the Inspection Period.  Comp. at ¶ 22.  Because of this and other issues that were being discussed, on July 26, 2021, the parties signed a "First Amendment To Contract Of Purchase And Sale" to extend the Inspection Period to August 6th and to schedule the closing for August 16th.  *Id*. at ¶ 23; *see also*, **Exhibit C** to the Complaint.  Despite any open issues, Plaintiff intended to close on the sale on August 16, 2021.  Comp. at ¶ 24.

For example, as of August 3, 2021, the parties' counsel were discussing the previously identified title issues, including an easement needed to service the Land.  *Id*. at ¶ 25.  Indeed, on or about August 5-6, 2021, the same time Defendant contends the contract terminated, Defendant's counsel contacted

4

the City of Butler attempting to secure the easement. *Id*. at ¶ 26.  By August 9th Defendant's counsel was assuring Plaintiff that he was working to secure the easement prior to the August 16th closing. *Id*. at ¶ 27.

Another issue the parties were discussing was the condition of the roof on the building located on the Land.  In May 2021, Defendant had pointed out to Plaintiff during a tour of the Land that the roof leaked.  This condition was noted in a property condition report earlier received from Defendant calling for over $730,000 of roof repairs and replacements by 2022. *Id*. at ¶ 28. During the parties' discussions and negotiations Defendant had acknowledged that the roof repairs would be needed as part of the sale. *Id*. at ¶ 29.  However, because of labor shortages stemming from the Covid-19 pandemic, and due in part to the isolated nature of the Land in Butler Indiana, the first bid to repair the roof, from Landmark Roofing, was not obtained until July 30, 2021. *Id*. at ¶ 30.  Even so, and with no definite plan to repair the roof, the parties continued discussing possible solutions prior to the scheduled closing. *Id*. at ¶ 31.[3]

---

[3] Resolving the leaking roof issue, pre-closing, was for Defendant's benefit. Under the Contract of Purchase and Sale Plaintiff was purchasing the property commonly referred to as "100 Commerce Street, Butler, Indiana 46721," and leasing it back to Defendant.  Under §4(a) of the Lease, Defendant was responsible for "the costs of maintaining, repairing and replacing, [the roof] as reasonably determined by [Plaintiff]."  In fact, under §4(f), Defendant waived any claims against Plaintiff due to "leaking of roofs."

In reliance on Defendant's representations, on Friday, August 13, 2021, Plaintiff's counsel prepared and sent to Defendant's counsel copies of the closing documents needed for the closing scheduled for August 16, 2021, including specifically (a) a Special Warranty Deed; (b) a Bill of Sale; (c) a Blanket Transfer and Assignment; (d) a Foreign Investment in Real Property Tax Act withholding document; (e) the Indiana Sale Disclosure forms, (f) the Commercial Lease Agreement; and (g) a Commercial Lease Guaranty. *Id*. at ¶ 32. As of August 13th, Defendant did not object to closing, asserting only that "[w]e reviewed the most recent proposal and our position remains that this is a late change and we do not accept any changes from the agreement and have now missed the possibility to close as agreed on Monday August 16 as previously agreed." *Id*. at ¶ 33; *see also*, **Exhibit D** to the Complaint.

## C.     Defendant's refusal to close

The sale and purchase did not close on August 16, 2021. *Id*. at ¶ 34. As of August 16th, Defendant had refused to sign and return the closing documents. *Id*. at ¶ 35. Even so, as of August 16th Plaintiff was ready, willing and able to close on the sale and purchase of the Property. *Id*. at ¶ 36. When the closing did not take place as scheduled, Jonathan Fine, on Plaintiff's behalf, wrote to Ray Bomya, for Defendant, stating that Plaintiff was willing to close despite the open easement and roof issues:

> It was great speaking with you earlier.  As we discussed, our side
> was prepared to close today and would like to ensure that a
> closing happens as soon as possible. . .  I also want to reemphasize
> that we are ok with legal issues such as neighboring easements be
> resolved post-closing in order to make sure that you are accessing
> liquidity as soon as possible.  Our priority has always been to
> close with you promptly under terms that you feel are fair and
> reasonable.  Your attorney has received all of the applicable
> closing documents in order to prepare for what could have been
> closed today.  We are ready to wire once the lease has been signed
> and Tony confirms the settlement statements.

*Id.* at ¶ 37; *see also*, **Exhibit E** to the Complaint.

As of August 16th, Defendant was not claiming the Contract of Purchase and Sale had terminated ten days earlier.  Comp. at ¶ 38.  Instead, Defendant was acknowledging Plaintiff's intention to close and was merely seeking to delay the closing, stating, "I saw you tried to call.  I am booked heavy today with meetings.  We will need a day or so.  We are evaluating what our next steps need to be from the Sweden side."  *Id.*; *see*, **Exhibit F** to the Complaint.

Unknown to Plaintiff, on July 21, 2020, and in violation of ¶6.5 of the Contract of Purchase and Sale, Defendant had obtained a loan and encumbered the Land with a Commercial Mortgage.  *Id*. at ¶ 39; *see also*, **Exhibit G** to the Complaint.  After giving the mortgage Defendant was unable to close of the sale of the Property without triggering the mortgage's due on sale clause.  *Id*. at ¶ 40.  Defendant wrongfully withheld that information from Plaintiff.  *Id*.  This may well explain Defendant's refusal to close on August 16th.

Compounding this breach of the Contract of Purchase and Sale, Defendant created a new excuse for its refusal to close.  On August 18, 2021, Defendant sent Plaintiff a "Notice of Termination."  *Id*. at ¶ 41; *see also*, **Exhibit H** to the Complaint.  In the notice, citing ¶5.2 of the Contract of Purchase and Sale, Defendant inexplicably claimed - for the first time - that the contract automatically terminated on August 6th when Plaintiff did not otherwise expressly terminate it by a written notice.  *Id*. at ¶ 42-43.

Defendant's reliance on ¶5.2 is simply wrong.  *Id*. at ¶ 44.  Paragraph 5.2 is a termination provision solely for Plaintiff's benefit.  *Id*. at ¶ 45.  It permitted Plaintiff to terminate the contract and sale should it decide not to proceed with the purchase in its "sole and absolute discretion."  *Id*. at ¶ 46.  Nothing in ¶5.2 permits Defendant to terminate the Contract of Purchase and Sale, for any reason.  *Id*. at ¶ 47.  Nor does that section result in an automatic termination when Plaintiff chose not to intentionally terminate it, as discussed more fully below.  Defendant plainly knew that Plaintiff intended to close on August 16th and that it was ready, willing, and able to do so.  *Id*. at ¶ 48.

### III.  ARGUMENT

**A.     Standard of Review**

A motion under Rule 12(b)(6) tests whether a cognizable claim has been pled.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th

Cir. 1988).  Courts must construe complaints in the light most favorable to the

plaintiff and accept all factual allegations as true.  *Bloch v. Ribar*, 156 F.3d 673,

677 (6th Cir. 1998).  A complaint need only "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*.[4]

**B.     The motion to dismiss should be denied because the Contract of
Purchase and Sale did not automatically terminate on August 6th.[5]**

Count I of the Complaint is a request for a declaratory judgment which

is governed by 28 U.S.C. 2201.  Section 2201(a) provides in relevant part that

"[i]n a case of actual controversy within its jurisdiction, . . . any court of the

United States, upon the filing of an appropriate pleading, may declare the

---

[4] Under Rule 12, "a court may consider exhibits attached to the complaint,
public records, items appearing in the record of the case, and exhibits
attached to defendant's motion to dismiss, so long as they are referred to in
the complaint and are central to the claims contained therein, without
converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.
3d 623, 640 (6th Cir. 2016).

[5] Under ¶ 13.2 of the Contract of Purchase and Sale Indiana law "govern[s] the
validity, construction, enforcement and interpretation of this contact." *See*,
*Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) ("Issues
regarding the formation, construction, and enforceability of a settlement
agreement are governed by local contract law.").

rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." *See also*,

Fed.R.Civ.P. 57 ("The existence of another adequate remedy does not preclude

a declaratory judgment that is otherwise appropriate.").

In Count I, after incorporating all other alleged facts generally, Plaintiff

alleges specifically:

> 50.    The parties agreed to sell and purchase the Property under the terms of the Contract of Purchase and Sale.

> 51.    Defendant's attempt to terminate the sale and purchase by invoking ¶5.2 while wrongful, it calls into question the parties' rights and obligations under Contract of Purchase and Sale.

> 52.    Plaintiff stands ready to close on the sale and purchase of the Property under the terms of the Contract of Purchase and Sale, but Defendant has wrongfully refused insisting that Plaintiff terminated the contract on August 6, 2021.

> 53.    An actual controversy exists over the parties' respective rights and obligations under the Contract of Purchase and Sale.

To summarily dismiss Count I the Court must be satisfied that Plaintiff has not

stated a plausible claim for declaratory relief.  The sole reason Defendant

offers to preclude the Court's inquiry into the parties' contractual rights and

obligations is that the Contract of Purchase and Sale terminated on August 6th

under ¶5.2 and only because Plaintiff did not expressly terminate it by a

written notice.  Based on the facts a pled and construing the facts most

favorably to Plaintiff, and accepting them as true, an automatic termination

under ¶5.2 is a conclusion the Court simply cannot reach.

      Defendant relies upon a single sentence in ¶5.2 which reads

> If Purchaser does not timely deliver to Seller written notice of
> termination during the Inspection Period, the conditions of this
> Section 5.2 shall not be deemed satisfied, and Purchaser shall be
> deemed to terminate this Contract pursuant to this Section 5.2.

While it is true that Plaintiff did not notify Defendant in writing it was

terminating the contract - as it intended to close on the 16th - that certainly did

not mean that the sale was being cancelled – plainly an illogical conclusion.

      To construe the Contract of Purchase and Sale the Court must interpret

the contract language "so as to ascertain the intent of the parties" and the

contract must be read "so as to harmonize its provisions." *First Federal

Savings Bank of Indiana v. Key Markets*, 559 N.E.2d 600, 603 (Ind. 1990).  What

matters is the parties' intention when the contract was made as shown by the

language used to express their rights and duties. *Abbey Villas Dev. Corp. v. Site

Contractors, Inc.*, 716 N.E.2d 91, 100 (Ind. App. 1999); *Celadon Trucking Servs.,

Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. App. 2017).  The contract is to be read

as a whole and construed so as not to render any words, phrases, or terms

ineffective or meaningless. *T–3 Martinsville, LLC v. U.S. Holding, LLC*, 911

N.E.2d 100, 111 (Ind. App. 2009).  Similarly, the Court must accept an interpretation that does not create conflicts within the contract.  *Id*.

Most significantly, "[a] contract should be interpreted by a court to give legal effect rather than render it invalid." *Prell v. Trustees of Baird and Warner Mortgage and Realty Investors*, 179 Ind. App. 642; 386 N.E.2d 1221, 1228 (1979).  *See also*, *Indiana-American Water Co., Inc. v. Town of Seelyville*, 698 N.E.2d 1255, 1260 (Ind. App. 1998) ("we will strive to interpret a contract as valid rather than void"); *Hinc v. Lime-O Sol Co.*, 382 F.3d 716, 720 (7th Cir. 2004) ("Where possible, Indiana courts will construe contracts as being valid, rather than void.").

Defendant contends that the entire contract terminated when Defendant did "not timely deliver to Seller written notice of termination during the Inspection Period" as mentioned in ¶ 5.2.  This is a misreading of that provision.  Paragraph 5.2 existed to protect Plaintiff.  It allowed Plaintiff to terminate the contract at any time prior to the expiration of the "Inspection Period" "for any reason or for no reason whatsoever in Purchaser's sole and absolute discretion. . . by delivering written notice of termination to Seller prior to the end of such Inspection Period."  Plaintiff chose to proceed with the sale and purchase, which is precisely why it did not send Defendant a written termination notice.  As of August 6th the parties were proceeding to a closing

12

based on their written communications (Comp. at ¶¶ 27 & 33), the scheduled closing date of August 16th (Comp. at Ex. C) and the exchange of closing documents on August 13th (Comp. at ¶ 32).

The construction of ¶5.2 Defendant offers violates every rule of contract construction applicable.  First, Defendant seeks to read a single sentence of ¶5.2 in isolation and in disharmony with other sections.  Paragraph 5.2, as Defendant reads its, conflicts with ¶1.1 through which "Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller" all of the Property for the $4,200,000 price described in ¶1.2 secured by the deposit described in ¶3.1.  It also conflicts with the parties' conduct after August 6th during which time they were attempting to secure the Land easement and they prepared and reviewed the documents needed for the closing, including specifically (a) a Special Warranty Deed; (b) a Bill of Sale; (c) a Blanket Transfer and Assignment; (d) a Foreign Investment in Real Property Tax Act withholding document; (e) the Indiana Sale Disclosure forms, (f) the Commercial Lease Agreement; and (g) a Commercial Lease Guaranty.  Comp. at ¶ 32.  Upon receiving the closing documents Defendant made no mention of a termination a week earlier.  Instead, Defendant spoke only of its belief that it was not accepting "any changes from the agreement . . . ." and that it was probably too late to practically close August 16th.   Comp. at ¶ 33.

13

Plaintiff's actions on August 16th also were consistent with the intention and belief that if not on the 16th a closing would nonetheless occur.  Plaintiff stated to Defendant, "[a]s we discussed, our side was prepared to close today and would like to ensure that a closing happens as soon as possible.  We can close under the current terms," and leave the open issues of the easement and roof repairs for another day post-closing.  Comp. at **Exhibit E**.  Plaintiff received no rebuke from Defendant, and certainly no declaration that the contract had terminated ten days earlier.  Rather, Defendant stated "[w]e will need a day or so.  We are evaluating what our next steps need to be from the Sweden side." *Id*. at **Exhibit F**.[6]

As of August 16th, Defendant had no explanation for its refusal to close and it was taking its directions from its parent in Sweden.  What those directions were one can only guess.  However, we do know that sometime between August 16th and August 18th, Defendant framed its *automatic termination* theory under ¶ 5.2.  The Court simply cannot read and construe ¶5.2, as Defendant asks it to do, because the proffered construction violates the applicable rules of construction including the cardinal rule that a Court cannot construe a contract to render it void, if at all possible.  But accepting Defendant's construction would do just that because under ¶5.2 the contract

---

[6] As apparent reference to Defendant's parent company in Sweden.

terminated if Plaintiff sent a termination notice as well as if no notice was

sent.  Put simply, Defendant's proposed construction of ¶5.2 renders the

entire contract void because it must terminate as of August 6th when Plaintiff's

Inspection Period ended.  Indiana law does not permit this result.[7]

Construing the Complaint in the light most favorable to Plaintiff, and

accepting the facts pled as true, including the allegations and claims relating

specifically to the Contract of Purchase and Sale, Plaintiff has stated a

plausible claim for a declaration of the parties' contractual rights and

responsibilities.  Defendant's motion to dismiss based on its self-serving

construction of ¶5.2 must be rejected for the reasons explained above.

**C.    Questions of fact exist as to whether the Contract of Purchase and Sale should be specifically enforced**.

Under Indiana law, the grant of specific performance directs the

performance of a contract according to, or substantially in accordance with,

the precise terms agreed upon." *Kesler v. Marshall*, 792 N.E.2d 893, 896 (Ind.

App. 2003).  The decision whether to order specific performance is a matter of

the trial court's discretion, "but is governed by and must conform to the well-

---

[7] At the very least, ¶5.2 is ambiguous as to its intended meaning.  A contract is ambiguous if "reasonable persons would differ as to the meaning of its terms." *Beam v. Wausau Ins. Co*., 765 N.E.2d 524, 528 (Ind. 2002).  "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010).

settled rules of equity." *Id.* "[A] party seeking specific performance 'must prove that he has substantially performed his contract obligations or offered to do so.'" *SCI Indiana Funeral Servs., Inc. v. D.O. McComb & Sons, Inc.*, 820 N.E.2d 700, 707 (Ind. App. 2005).

In Count II of the Complaint, in addition to the general factual allegations, Plaintiff specifically alleges that as of August 16th it was ready, willing and able to close on the sale and purchase of the Property:

> 55.    The parties agreed to the sale and purchase of the Property under the terms of the Contract of Purchase and Sale.
>
> 56.    Plaintiff stands ready, willing and able to close on the purchase of the Property, but Defendant has wrongfully refused.
>
> 57.    Defendant has intentionally breached the Contract of Purchase and Sale by its refusal to close on the sale and by its wrongful encumbering of the Land with a commercial mortgage.
>
> 58.    As a result of Defendant's breach of the Contract of Purchase and Sale and the damages Plaintiff will incur as result of Defendant's breach, the Contract of Purchase and Sale should be specifically enforced.

Defendant's request to dismiss Count II fails for the same reasons discussed above concerning Defendant's erroneous construction of ¶5.2.  Defendant's contention that the Contract of Purchase and Sale also is unenforceable because there was no meeting of the minds is equally wrong.

16

"To be valid and enforceable, a contract must be reasonably definite and certain." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-13 (Ind. 2009).  Surgical precision as to every term is not required.  "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required." *Id*.  "Only essential terms are necessary for a contract to be enforceable." *Jetz Serv. Co., Inc. v. Ventures*, 165 N.E.3d 990, 995 (Ind. App. 2021).  "A court will not find that a contract is so uncertain as to preclude specific enforcement where a reasonable and logical interpretation will render the contract valid." *Conwell, supra* 813.

In this case, a reasonable and logical interpretation of the Contract of Sale and Purchase is that it covered all essential terms, including the price of $4,200,000.  This conclusion is supported by the parties' objective manifestations of their mutual intent to buy and sell the Property as pled throughout the Complaint and particularly as documented in their written agreement.  The Plaintiff and Defendant are sophisticated parties who at all times were represented by experience commercial attorneys of their choosing.  These parties and their counsel knew how to craft an enforceable agreement as is evident by a plain reading of the Contract of Sale and Purchase.  The very existence of the signed agreement belies any claim that no

17

agreement exists.  *See, Weaver v. American Oil Co*., 257 Ind. 458, 463-464; 276

N.E.2d 144, 147 (1971) ("an agreement or contract, signed by the parties, is

conclusively presumed to represent an integration or meeting of the minds of

the parties"); *Brown v. Indiana Dept. of Conservation*, 140 Ind. App. 638, 644;

225 N.E.2d 187, 191 (1967) ("when persons who are competent to execute

contracts, (a contract) sign their name (names) to a written agreement the

presumption arises that they knew and understood the nature of the

contract").  *See also, Meyer v. Marine Builders, Inc*., 797 N.E.2d 760, 772 (Ill.

App. 2003) ("written instruments are presumed to reflect the intentions of the

parties to those instrument").

The existence of the Contract of Sale and Purchase is undisputed.

Defendant makes no claim that the parties' agreement was in any way legally

defective or that it did not bind them to buy and sell the Property.  Rather,

Defendant argues there was no meeting of the minds because on July 26, 2021

Plaintiff sent Defendant a title and survey objection letter listing issues to be

resolved prior to closing.  *Id*. at ¶ 21; *see also*, **Exhibit B** to the Complaint.

Scrutinizing a property's title in a $4,200,000 deal is neither unusual nor a

basis to nullify the agreement when a title issue is found.  This is particularly

true here given that at the conclusion of the Inspection Period the parties

proceeded to the scheduled closing by preparing and exchanging detailed

closing documents.  Comp. at ¶ 32.  Plaintiff also made clear on August 16th that it was ready to close and was agreeable to resolving the easement issue post-closing.  *Id*. at ¶¶ 36-37; *see also* **Exhibit E** to the Complaint.

Defendant also contends that no meeting of the minds existed because as of August 16th the parties disagreed as to whether to repair the roof before the closing.  Once again, Defendant overlooks the fact that as of August 16th Plaintiff was prepared to "close under the current terms" despite the open issue surrounding the roof repairs.  *See*, **Exhibit E** to the Complaint.  Leaving issues to be resolved post-closing in a complex commercial transaction also is not at all unusual.  The fact remains that the parties' agreement was reduced to a fully integrated, written contract.  *See*, **Exhibit A** at ¶13.3 to the Complaint.  The meeting of the minds is found within the parties' signed agreement which cannot be legally challenged based on extraneous communications and negotiations, common as they may be.

Regardless, even if the Court were to conclude that as of August 16th the parties had left unresolved the issues surrounding the easement and the leaking roof, whether they nonetheless intended to be bound by the terms of the Contract of Purchase and Sale would be a question of fact "to be determined from all the circumstances."  *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. App. 1994).  Similarly, whether Defendant has established a valid

19

defense to the Plaintiff's claims also is ordinarily a question of fact. *Rauch v. Shots,* 533 N.E.2d 193, 194 (Ind. App. 1989).

For these reasons, too, Defendant's motion to dismiss based on the alleged absence of a meeting of the minds must be rejected.

**D.    The facts as pled establish that Defendant breached the Contract of Purchase and Sale**.

To state a valid and enforceable claim for breach of the Contract of Purchase and Sale, Plaintiff need only allege that (1) a contract existed, (2) Defendant breached the contract, and (3) Plaintiff suffered damage because of Defendant's breach. *Morris v. Crain*, 71 N.E.3d 871, 880 n.5 (Ind. App. 2017).

In Count III, in which Plaintiff pleads in the alternative for damages due to Defendant's breach of the Contract of Purchase and Sale, Plaintiff alleges:

60.    Plaintiff and Defendant signed the Contract of Purchase and Sale whereby the parties agreed to sell and purchase the Property.

61.    Defendant breached the Contract of Purchase and Sale by refusing to close on the sale and by wrongly encumbering the Land with a commercial mortgage without Plaintiff's knowledge or consent.

62.    As a result of Defendant's breach Plaintiff is entitled to specific performance as requested in Count II.

63.    As an alternative request for relief, Plaintiff is entitled to recover its damages as a result of Defendant's breach of contract.

Plaintiff has pled the necessary elements, supported by underlying facts, to established a plausible claim for breach of contract, particularly given that Defendant's only real defense is that the parties' contract terminated on August 6th, a claim which is simply wrong or, at worst, identifies a material disputed question of fact as to whether Defendant breached the contract by its refusal to close.  *See, Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165 (Ind. App. 2007) (whether a breach is material is generally a question of fact); *State v. International Business Machines Corp.*, 51 N.E.3d 150, 158 (Ind. 2016).

**E.   The facts pled do not show as a matter of law that Plaintiff committed the first material breach**.

Defendant asserts that if the Contract of Purchase and Sale did not terminate under ¶5.2 Defendant could walk away because Plaintiff did not pay an additional deposit at the close of the Inspection Period on August 6th.[8] Defendant is wrong.  Nothing in the Contract of Purchase and Sale makes the failure to increase the ¶3.1 deposit a default under ¶10.1.  Regardless of the amount of the deposit, under ¶7.2(b) Defendant was required to close if "Purchaser shall have delivered the total Purchase Price . . ." at the time of the

---

[8] Defendant also believes that an additional $50,000 payment was due to extend the closing date after August 16th, but Defendant sent its Termination Notice under ¶5.2 only two days after refusing to close rendering the payment to extend the closing not yet due or rendering it a futile act.  *See*, *North Side Asphalt & Material Transport, Inc. v. Foreman*, 520 N.E.2d 457, 460 (Ind. App. 1988) (downpayment was a futile act after seller unable to perform).

closing.  Regardless, this requirement also was waived and would not amount

to a material breach in any event.

The law is clear that a party's compliance with a contract provision can

be excused by the other party's waiver.  *L.H. Controls, Inc. v. Custom Conveyor,*

*Inc.*, 974 N.E.2d 1031, 1050-51 (Ind. App. 2012).  "Waiver of a contractual

provision is an intentional relinquishment of a known right involving both

knowledge of the existence of the right and the intent to relinquish it."  *Id*. at

1051.  "'Waiver may be implied from the acts, omissions, or conduct of one of

the parties to the contract.'"  *Id*. (quoting *Westfield Nat. Ins. Co. v. Nakoa*, 963

N.E.2d 1126, 1132 (Ind. Ct. App. 2012).  Generally, if a party to a contract

performs acts that recognize the contract still exists specific performance of

the contract is waived and there can be no forfeiture.  *Indiana Hotel Equities,*

*LLC v. Indianapolis Airport Authority*, 122 N.E.3d 901, 910 (Ind. App. 2019).

After the Inspection Period closed on August 6th, and the additional

deposit was not paid, Defendant did not declare a default.  Instead, the parties

continued to perform under the Contract of Purchase and Sale.  They

continued discussing the easement and roof issues, they prepared and

reviewed closing documents, and at no time prior to the filing of this action

did Defendant ever seek to justify its refusal to close based on the lack of an

additional deposit.  These facts show the parties' intention to waive the

requirement of an increased deposit, particularly given that the payment was to have been made a mere ten days before the closing.   As such, making an additional deposit on August 6th was not a material contract deviation given that under ¶3.2 the deposit was applied to the $4,200,000 purchase price, all of which Plaintiff was prepared to pay at the closing scheduled for August 16th, only ten days after the payment would otherwise have been made.

Regardless, a waiver is a question of fact which cannot be decided on a motion under Rule 12(b)(6).  *HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318, 324 (Ind. App. 2006).

## F.     The recording of Defendant's mortgage in 2020 does not justify terminating the Contract of Purchase and Sale.

Lastly, Defendant contends that Plaintiff's allegation that Defendant failed to disclose its mortgage on the Land incorrectly identified the mortgage date as 2021, and therefore "any claim based on the mortgage should be dismissed."  Defendant's Brief at 11.  In fact, none of Plaintiff's claims are dependent upon proof of Defendant's failure to disclose its mortgage, which it concedes through its reliance upon "constructive notice" to justify its position. Defendant's argument fails for this reason alone and is certainly no basis to dismiss any claim pled in the Complaint.

If fact, if Defendant sought to challenge a specific allegation in the Complaint it should have moved to strike under Rule 12(f).  However, such a motion would have required a showing that the matter pled was "redundant, immaterial, impertinent, or scandalous."  Defendant did not move under Rule 12(f) nor did it attempt to show that Plaintiff's allegations in ¶¶ 39-40, mistakenly identifying Defendant's mortgage as being recorded in 2021 rather than 2020, amounted to a matter that is "redundant, immaterial, impertinent, or scandalous."  This claim should also be rejected.

## CONCLUSION

For the reasons discussed above, Defendant's motions to dismiss the Complaint should be denied, and Plaintiff should be granted such other relief as is just.

PLUNKETT COONEY

By: /s/ Matthew J. Boettcher
    Matthew J. Boettcher (P40929)
    Attorneys for Plaintiff
    38505 Woodward Avenue, Suite 100
    Bloomfield Hills, MI  48304
    (248) 901-4035
    mboettcher@plunkettcooney.com

DATED:  October 15, 2021

**PROOF OF SERVICE**

On October 15, 2021 a copy of the foregoing Response Brief was served upon Defendant, by its counsel, via the Court's electronic filing system.

Signature: /s/ Matthew J. Boettcher

Open.28568.12720.27224006-1