UNITED STATES DISTRICT COURT

IN THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

BUTLER PROPCO, LLC,
a Delaware limited liability company,

      Plaintiff,

v.

CJ AUTOMOTIVE INDIANA, LLC,
an Indiana limited liability company,

      Defendant.

Case No. 2:21-cv-12013-MAG-EAS
Hon. Mark A. Goldsmith
Mag. Elizabeth A. Stafford

_____/

| PLUNKETT COONEY | PAESANO AKKASHIAN |
|---|---|
| Matthew J. Boettcher (P40929) | APKARIAN, P.C. |
| Attorneys for Plaintiff | Brian M. Akkashian (P55544) |
| 38505 Woodward Ave., Ste. 100 | Anthony R. Paesano (P60173) |
| Bloomfield Hills, MI 48304 | Alec M. Torigian (P81909) |
| (248) 901-4035 | Attorneys for Defendant |
| mboettcher@plunkettcooney.com | 7457 Franklin Road, Ste. 200 |
| | Bloomfield Hills, Michigan 48301 |
| | (248) 792-6886 |
| | bakkashian@paalawfirm.com |
| | apaesano@paalawfirm.com |

_____/

**CJ AUTOMOTIVE INDIANA, LLC'S REPLY TO
PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
<u>TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

LOCAL RULE CERTIFICATION: I, Brian M. Akkashian, certify that this document complies with Local Rule 5.1 (a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3)(B)

**I.    This Court Should Apply the Plain and Ordinary Meaning of Section 5.2, Which Automatically Terminated the Contract**

In its attempt to resuscitate the Contract of Purchase and Sale (the "Contract"), Plaintiff cites several cases setting forth certain generic principles of contract interpretation. Response, pp. 11-12. Conspicuously absent from Plaintiff's Response is any reference to the cardinal rule of contract interpretation, which is: "[w]here terms of a contract are clear and unambiguous, [courts] will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms." *John M. Abbott, LLC*, 14 N.E.3d at 56 (citing *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013)). *Wright v. State*, 700 N.E.2d 1153, 1155 (Ind. Ct. App. 1998) ("The primary goal of contract interpretation is to give effect to the parties' intent. Accordingly, when the terms of a contract are clear and unambiguous, they are conclusive of that intent and

the court will not construe the contract or look to extrinsic evidence. Rather, we will merely apply the contractual provisions."). Application of this fundamental principle requires a finding that the Contract automatically terminated pursuant to section 5.2.

Plaintiff argues that CJ misreads the Contract and that section 5.2 existed only for Plaintiff's benefit. Response, p. 12. The clear and umambiguous language of the Contract belies Plaintiff's contention. Section 5.2 does not provide Plaintiff with the ***choice*** to terminate the Contract or not at its discretion. Rather, Section 5.2 states that, if the required notice is not provided: "Purchaser shall be deemed to terminate this Contract." Section 5.2 is self-executing, the required notice was not provided, and the Contract is terminated.

Plaintiff further argues that to interpret Section 5.2 as written would create conflict within the Contract. In alleged support, Plaintiff cites section 1.1 of the Contract, which states: "Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller," the property. This argument misses the mark. Language similar to the quoted language can be found in nearly every agreement for the purchase of real property and such agreements are invariably subject to numerous requirements, conditions and rights of termination that often result in the property not being sold and the agreement being terminated. Such is the case here.

## II. There Was No Meeting of the Minds as to Material Terms

Plaintiff admits in its Complaint, (e.g., paragraphs 21, 23, 28-29, 31; Exhibits B, E) and its Response (pp. 4-5, 14, 19), that numerous material terms remained unresolved as of the scheduled closing date including, but not limited to, purchase price, title issues, easements and others. "The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." *Ochoa v. Ford*, 641 N.E.2d 1042 (citing *Olsson v. Moore*, 590 N.E.2d 160, 162 (Ind. Ct. App. 1992)). In *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993), the Court held that a real estate purchase contract must include the parties, real estate, **purchase price**, and closing date.

Despite its acknowledgement that material terms of the transaction, including purchase price, had not been agreed by the closing date, Plaintiff alleges that it was willing to close on August 16, 2021 anyway and proceed on faith that all open issues, no matter how significant or material, would be resolved post-closing.

First and foremost, Plaintiff is asking the Court to consider events subsequent to August 6, 2021 to determine the parties' contractual intent. This constitutes a request that the Court consider extrinsic evidence to interpret a clear and unambiguous contract, which the Court may not do. *Wright*, 700 N.E.2d at 1155. That should be the end of the analysis.

In any event, scrutiny of the events between August 6, 2021 (the termination date) and August 16, 2021 (the scheduled closing date) confirms that Plaintiff was

attempting to "hedge its bet" by claiming a willingness to close, knowing very well that closing would not occur. First, Plaintiff admits that it did not send draft closing documents to CJ until Friday, August 13, 2021, one business day before the closing scheduled for Monday, August 16, 2021. Complaint, ¶32. When the closing did not occur on August 16, 2021, Plaintiff sent an email to CJ at 6:48 p.m., claiming that it was ready to close that day and then, in the next paragraph, acknowledging that the roof remained an unresolved issue, in an amount between $300,000-$1,000,000. Exhibit E to Complaint. The purchase price set forth in the Purchase Agreement was $4.2 million. The cost of the roof, who would pay for it, who would repair it and when it would be repaired had not been settled as of August 16, 2021. This is in addition to the other issues that remained open as of August 16, 2021. These issues were never resolved, the parties had not reached a meeting of the minds as of the scheduled closing date and the closing date was not extended.

### III. Plaintiff Engaged In the First Material Breach, Relieving CJ of Any Further Obligation to Perform

Plaintiff admits that it failed to make either the $50,000 payment following the Inspection Period or the $50,000 payment that served as consideration for extension of the closing date. Response, pp. 21-23. Plaintiff's admission confirms Plaintiff's first material breach of the Contract, which relieved CJ of any further obligation to perform. *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986) (A party first guilty of a material breach of contract may not maintain

4

an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract).

Plaintiff argues that CJ waived any breach. In analyzing a Motion to Dismiss pursuant to Rule 12(b)(6), the Court does not consider matters outside the pleadings. *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009). Plaintiff did not assert waiver in its Complaint, but only in its Response, which is not part of the pleadings. Further, in evaluating a Rule 12(b)(6) Motion, the Court is not required to accept assertions of unwarranted factual inferences. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (citing *N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995)); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Therefore, the Court should not consider Plaintiff's waiver argument in deciding CJ's motion.

Plaintiff cites *HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318 (Ind. App. 2006), to support its statement that "waiver is a question of fact which cannot be decided on a motion under Rule 12(b)(6)." Response, p. 23. *Onofrey* doesn't say that. *Onofrey* did not even involve Rule 12(b)(6), but rather summary judgment under Rule 56.

Factually, *Onofrey* bears no resemblance to this case. *Onofrey* was a landlord-tenant matter where the issue was whether acceptance of late rental payments for at least a year resulted in waiver of the landlord's right to declare default and/or enforce

5

a guaranty of the lease. Plaintiff here failed to make two $50,000 payments that were due in late July and early August of 2021 and CJ notified Plaintiff that the Contract had terminated on August 18, 2021 (Exhibit H to Plaintiff's Complaint), less than one month after the payments were due. Plaintiff cannot reasonably argue waiver by CJ based on the passage of a matter of days following Plaintiff's breach.

Further, while the Court in *Onofrey* stated that waiver "is generally a question of fact," the Court ultimately held:

> We conclude that Onofrey Food Services defaulted on its Lease prior to September 25, 2001, that New Plan did not waive the default, that Onofrey's Guaranty did not expire on September 25, 2001, that pursuant to the language of the Guaranty, Onofrey was not entitled to notice of Onofrey Food Services' default, and that even if New Plan and Onofrey Food Services modified the Lease through their conduct, Onofrey's Guaranty was not affected. *Id*. at 326.

In other words, the holding in *Onofrey* is the exact opposite of the result sought by Plaintiffs on this motion.

### IV. Plaintiff's Claims Based on the Mortgage Should Be Dismissed

Plaintiff's Response states that "none of Plaintiff's claims are dependent upon proof of Defendant's failure to disclose its mortgage." Response, p. 23. This directly contradicts Plaintiff's Complaint which states, in its breach of contract claim: "Defendant breached the Contract of Purchase and Sale…by wrongly encumbering the Land with a commercial mortgage without Plaintiff's knowledge or consent." Complaint, ¶61.

6

As set forth in CJ's motion, and as acknowledged in Plaintiff's Response (Response, p. 24), the mortgage is dated July 21, 2020, and was recorded in the public record on August 11, 2020, almost a year before the Contract was signed. Further, a purchaser is presumed to have notice of a recorded mortgage. "A mortgage provides constructive notice to subsequent purchasers when it is properly acknowledged and recorded." *Bank of N.Y. v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005).

CJ's motion regarding the mortgage was in reaction to Plaintiff's Complaint. Plaintiff now appears to concede that it has no claim relating to the mortgage. Any claim or part thereof that is based on Plaintiff's allegations regarding the mortgage should be dismissed.

## **CONCLUSION**

CJ respectfully requests that this Court dismiss Butler's claims, in their entirety, pursuant to Fed. R. Civ. P. 12(b)(6), and award CJ all costs and attorney fees relating to this motion.

PAESANO AKKASHIAN APKARIAN, P.C.

By: */s/ Brian M. Akkashian*
Brian M. Akkashian (P55544)
7457 Franklin Road, Ste. 200
Bloomfield Hills, Michigan 48301
(248) 792-6886
bakkashian@paalawfirm.com
*Attorneys for Defendant*

Dated: October 28, 2021

7

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF Efile and Serve system which will send notification of such filing to all registered counsel.

PAESANO AKKASHIAN
APKARIAN, P.C.


By: */s/ Brian M. Akkashian*


Brian M. Akkashian (P55544)
Anthony R. Paesano (P60173)
Alec M. Torigian (P81909)
7457 Franklin Road, Ste. 200
Bloomfield Hills, Michigan 48301
(248) 792-6886
bakkashian@paalawfirm.com
apaesano@paalawfirm.com
*Attorneys for Defendant*