UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUTLER PROPCO, LLC,

        Plaintiff,

Case No. 21-cv-12013

vs.

HON. MARK A. GOLDSMITH

CJ AUTOMOTIVE INDIANA, LLC,

        Defendant.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (Dkt. 8)**

Plaintiff Butler Propco, LLC brought this action to enforce a contract to purchase real property from Defendant CJ Automotive Indiana, LLC. CJ, no longer willing to sell, filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is now before the Court (Dkt. 8). For the reasons that follow, the Court grants in part and denies in part CJ's motion to dismiss.[1]

**I. BACKGROUND**

On June 25, 2021, Butler and CJ signed the contract at issue in this case: an agreement labeled "Contract of Purchase and Sale" providing for Butler's purchase of certain real property located in Butler, Indiana, including various appurtenances and improvements located on or pertaining to the property. Compl. ¶¶ 6–7, 12 (Dkt. 1) (citing Contract (Dkt. 1-2)).

Section 5.1 of the agreement granted Butler a 30-day inspection period during which it was permitted to examine the property and various documents, including CJ's title policy. Contract at PageID.21–22. Section 5.2 gave Butler the right to terminate the contract by delivering written

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to CJ's motion, the briefing includes Butler's response (Dkt. 13) and CJ's reply (Dkt. 14).

1

notice of termination to CJ at any time before the end of the inspection period. Id. at PageID.22. Section 3.1 of the contract required that—if Butler elected <u>not</u> to terminate the contract—it pay an additional $50,000 in earnest money within one business day after close of the inspection period. Id. at PageID.19. Per Section 3.2, this money was to be held in escrow and applied to the purchase price at closing if the purchase and sale were consummated. Id.

CJ alleges that Butler did not deliver written notice of termination during the inspection period and never paid the $50,000 deposit due at the close of the inspection period. Mot. at 3–4. Butler does not deny these allegations.

Additionally, Section 4.1 allowed Butler to notify CJ of any objections to matters relating to the property's title and surveys. Id. at PageID.20. Butler sent CJ a title and survey objection letter on July 26, 2021, listing issues to be addressed prior to closing. Compl. ¶ 21 (citing Objection Letter (Dkt. 1-3)). In part due to these issues, the parties amended the contract to extend Butler's inspection period to August 6, 2021, and they established a closing date of August 16, 2021. Compl. ¶¶ 22–23 (citing Amendment to Contract (Dkt. 1-4)).

Butler raised additional concerns as the closing date approached. Butler represents that its counsel contacted the City of Butler to attempt to obtain an easement needed to service the land, and that CJ communicated to Butler that it was working to resolve this issue. Id. ¶¶ 26–27. Butler also states that it had identified issues with leakage from the property's roof, and that CJ acknowledged that roof repairs would be needed as part of the sale and purchase. Id. ¶¶ 28–29.

Butler submits that it sent CJ copies of the closing documents on August 13, 2021. Id. ¶ 32. However, a representative of CJ responded: "[W]e do not accept any changes from the agreement and have now missed the possibility to close . . . ." 8/13/21 Email (Dkt. 1-5). On August 16, a representative of Butler emailed CJ, stating: "As we discussed, our side was prepared to close today and would like to ensure that a closing happens as soon as possible." 1st 8/16/21

2

Email at 1 (Dkt. 1-6). Butler identified pending issues but emphasized its willingness to close, stating in part:

> We can close under the current terms however, [sic] leaving the roof as is will only cost us both more in the long run. . . . Closing under the current conditions may cost CJ more over the course of the lease term. Our interest is for CJ to be in the best position possible and we are not insisting upon a $1M roof repair—it seems like this has been lost in translation. . . . I also want to reemphasize that we are ok with legal issues such as neighboring easements be resolved [sic] post-closing in order to make sure that you are accessing liquidity as soon as possible. Our priority has always been to close with you promptly under terms that you feel are fair and reasonable."

Id. at 1–2.

CJ's representative responded that CJ would "need a day or so." 2d 8/16/21 Email (Dkt. 1-7). The closing did not occur on August 16, 2021. Compl. ¶ 34. On August 18, CJ sent Butler a notice of termination based on Butler's failure to "timely deliver to [CJ] written notice of termination during the Inspection Period." Notice of Termination (Dkt. 1-9).

Butler brought the present action seeking (i) declaratory relief, including a determination that the contract is valid and enforceable; (ii) specific performance of the contract; and (iii) a finding that CJ breached the contract. Compl. ¶¶ 49–63.[2] In its motion to dismiss now before the Court, CJ argues that the Court should dismiss Butler's claims. Mot.

## II. ANALYSIS[3]

---

[2] Butler's claims included the allegation that CJ "secretly" obtained a mortgage on July 21, 2021 in violation of Section 6.5 of the Contract. Compl. ¶ 39 (citing Mortgage (Dkt. 1-8)). CJ points out that the mortgage is in fact dated July 21, 2020 and was recorded on August 11, 2020, and so its existence was a matter of public record. Mot. at 4 (citing Mortgage at 1).

[3] "In order to survive a motion to dismiss, the plaintiff's complaint must allege facts, which if proved, would entitle the claimant to relief." Helfrich v. PNC Bank, Kentucky, Inc., 267 F.3d 477, 480 (6th Cir. 2001). Courts reviewing a motion to dismiss must accept the alleged facts as true and make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Typically, a court is confined to the pleadings in resolving a motion to dismiss. However, "court[s] may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." See Rondigo, LLC v. Twp. of Richmond, 641 F.3d 673, 680–681 (6th Cir. 2011) (punctuation modified).

3

Pursuant to Section 13.2 of the contract, Indiana law governs this dispute. See Contract at PageID.33. In Indiana, questions regarding the enforceability of contracts for the sale and purchase of real property are governed by generally applicable principles of contract construction. See, e.g., Wolvos v. Meyer, 668 N.E.2d 671, 674–677 (Ind. 1996); UFG, LLC v. Sw. Corp., 784 N.E.2d 536, 543–545 (Ind. Ct. App. 2003).[4]

The Court addresses each of CJ's arguments in turn and finds that only its challenge to Butler's claims based on the mortgage have merit at this stage of the proceedings.

### A. Whether Butler Terminated the Contract

The parties' dispute over whether Butler terminated the contract rests on an interpretation of Section 5.2, labeled "Approval of Inspections," which states in its entirety:

> If Purchaser determines at any time prior to the expiration of the Inspection Period
> that the Property is not satisfactory to Purchaser for any reason or for no reason

---

[4] "In interpreting a written contract," courts applying Indiana law "will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties." First Fed. Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 603 (Ind. 1990). Courts should "examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole." Celadon Trucking Servs., Inc. v. Wilmoth, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017). "A contract should be interpreted by a court to give legal effect rather than render it invalid." Prell v. Trustees of Baird & Warner Mortg. & Realty Invs., 386 N.E.2d 1221, 1228 (Ind. Ct. App. 1979).

"Where terms of a contract are clear and unambiguous," Indiana courts "apply the plain and ordinary meaning of the terms and enforce the contract according to its terms." John M. Abbott, LLC v. Lake City Bank, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). "[W]here the language of a contract is unambiguous, the parties' intent is to be determined by reviewing the language contained within the 'four corners' of the contract," and parol or extrinsic evidence is generally "inadmissible to expand, vary, or explain the instrument." Id. (punctuation modified, citation omitted).

"A contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." Abbey Villas Dev. Corp. v. Site Contractors, Inc., 716 N.E.2d 91, 100 (Ind. Ct. App. 1999). "If the ambiguity arises because of the language used in the contract and not because of extrinsic facts[,] then its construction is purely a question of law to be determined by the trial court." First Fed. Sav. Bank of Ind., 559 N.E.2d at 604. "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010).

> whatsoever in Purchaser's sole and absolute discretion, then <u>Purchaser may terminate this Contract by delivering written notice of termination to Seller prior to the end of such Inspection Period</u>. If Purchaser properly terminates this Contract pursuant to this Section 5.2, then this Contract shall be terminated, the Title Company shall return the Earnest Money Deposit to Purchaser upon the unilateral direction of Purchaser and notwithstanding any contrary direction from Seller, and neither party shall have any further rights, duties or obligations hereunder except with respect to the provisions of this Contract which expressly survive the termination of this Contract. <u>If Purchaser does not timely deliver to Seller written notice of termination during the Inspection Period, the conditions of this Section 5.2 shall not be deemed satisfied, and Purchaser shall be deemed to terminate this Contract pursuant to this Section 5.2</u>.

Id. at PageID.22 (emphasis added).

CJ insists that Butler cannot maintain its contract-based claims because Butler terminated the contract at the end of the inspection period when it failed to provide the written notice of termination referenced in Section 5.2. Mot. at 7. In CJ's view, Section 5.2 is self-executing, and because the required notice was not provided, the contract terminated when Butler failed to provide the notice. Id. at 6–7. In contrast, Butler argues that it is "plainly an illogical conclusion" that Butler's decision not to notify CJ in writing that it was terminating the contract meant that the sale was cancelled. Resp. at 11. Butler submits that Section 5.2 "existed to protect Plaintiff" and allowed Butler "'absolute discretion'" in deciding whether or not to terminate the contract. Id. at 12 (quoting Contract at PageID.22). Butler further contends that, at the very least, Section 5.2 is ambiguous. Id. at 15 n.7 (citing <u>Johnson</u>, 920 N.E.2d at 256).

The Court agrees with Butler that Section 5.2 is ambiguous because "it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." <u>Abbey Villas</u>, 716 N.E.2d at 100. One reading of Section 5.2 accords with CJ's view—that is, Butler "shall be deemed to terminate this Contract" if a specific condition is met: Butler "does not timely deliver to Seller written notice of termination during the Inspection Period." Contract at PageID.22. This interpretation creates tension within Section 5.2, however, because it

5

appears to leave Butler with no choice but to terminate the contract. That is, Butler either (i) "terminate[s] this Contract by delivering written notice of termination to Seller prior to the end of such Inspection Period," or (ii) "does not timely deliver to Seller written notice of termination during the Inspection Period" and then is "deemed to terminate this Contract." Id. This conclusion—seemingly at odds with the parties' intent—leads the Court to suspect that this section of the contract contains a typo, reinforcing the appropriateness of discovery.

An alternative reading of the contract may focus on the other stated result of Butler's failure to timely deliver written notice of termination—that is, "the conditions of this Section 5.2 shall not be deemed satisfied." Id. The "conditions" not satisfied in such a case refer to the statements listed at the beginning of the section, (i) "[i]f Purchaser determines . . . prior to the expiration of the Inspection Period that the Property is not satisfactory . . ." and (ii) "[i]f Purchaser properly terminates this Contract pursuant to this Section 5.2 . . . ". Id. Under this reading, the result of Butler's failure to timely deliver a notice of termination is that Butler has forsaken its discretionary right to terminate the contract. This construction, however, leaves the final statement meaningless: "Purchaser shall be deemed to terminate this Contract . . . ." Id.

The Court is unable to determine which interpretation of this ambiguously worded section accords with the parties' intent based only on the pleadings. The ambiguity in this section of the contract creates a question of fact. See Johnson, 920 N.E.2d at 256. Questions of disputed fact cannot appropriately be resolved by a motion to dismiss, and so CJ's argument that Butler terminated the contract as a matter of law must fail. See Hart v. Hillsdale Cnty., Mich., 973 F.3d 627, 643 (6th Cir. 2020).

### B. Whether the Formation of the Contract Lacked a "Meeting of the Minds"[5]

---

[5] "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." Ochoa v. Ford, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994) (citation omitted). "The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." Id. (citing Olsson v. Moore, 590 N.E.2d 160, 162

6

CJ argues that there was no meeting of the minds because the parties never reached agreement on multiple essential terms, including in relation to the issues that Butler identified in its July 26, 2021 objection letter. Mot. at 8 (citing Compl. ¶¶ 12, 21, 23, 28–29, 31; Objection Letter). CJ asserts that the August 16, 2021 emails demonstrate that the parties had not yet reached a meeting of the minds with respect to key terms by the scheduled closing date. Id. In CJ's view, even the purchase price for the property was undetermined at this time because the division of costs for repairing the roof remained unresolved. Id. at 9 (citing 2d 8/16/21 Email).

Butler argues that a reasonable and logical interpretation of the contract is that it covered all essential terms, including the purchase price of $4,200,000. Resp. at 17. Butler acknowledges that it sent CJ a title objection letter and raised other issues in advance of the scheduled closing, but it insists that scrutinizing these details does not invalidate the parties' written agreement. Resp. at 18. Additionally, Butler represented to CJ on the scheduled day of closing that it was ready to close and was willing to do so despite open questions. Id. at 19 (citing 1st 8/16/21 Email).

CJ has failed to establish that the parties' written contract does not represent the parties' intent as to the agreement's essential terms. The contract identified the parties, the subject real estate, the purchase price, and the closing date, and the contract was executed by a representative

---

(Ind. Ct. App. 1992). "[O]nly essential terms need to be included to render a contract enforceable," and "[o]nly reasonable certainty is necessary." Perrill v. Perrill, 126 N.E.3d 834, 840 (Ind. Ct. App. 2019) (punctuation modified, citations omitted).
    Indiana courts have found that contracts for the sale and purchase of real property contained all essential terms, and were thus enforceable, where the written contract identified the parties, the real property, the closing date, and the purchase price, and where the contract was signed by the party against whom enforcement was sought. See Wolvos, 668 N.E.2d at 676–677; UFG, 784 N.E.2d at 543–545; Johnson v. Sprague, 614 N.E.2d 585, 589 (Ind. Ct. App. 1993); see also Olsson, 590 N.E.2d at 162 (finding that there was no meeting of the minds sufficient for an oral contract for the sale of real property where parties disagreed on their understanding of what was being sold and for what price).
    Terms not included in the contract are not essential if "the law provides the missing terms." Sprague, 614 N.E.2d at 589 (finding that contract for sale of cottage was enforceable because absent terms regarding payment of real estate taxes, payment of common area maintenance fee and pier assessment, and provision of warranty deed and proof of title were not essential).

of CJ. See Contract at PageID.19, 27, 36; see also Amendment to Contract at 1–2. The contract thus contains the essential terms. See, e.g., Wolvos, 668 N.E.2d at 676–677.

CJ argues that the purchase price was indefinite because the parties had not agreed on how to allocate costs for the property's roof. Mot. at 8. However, the contract explicitly contains a purchase price for the property: $4,200,000. Contract at PageID.19. CJ cites no cases in support of its proposition that a contract's express purchase price should be considered indefinite because the parties subsequently dispute the allocation of costs for an aspect of the deal. Notably, if the allocation of costs for the roof were covered by applicable law, then that applicable law would fill in the missing terms, making those terms non-essential. Sprague, 614 N.E.2d at 589. The first August 16, 2021 email suggests that a default allocation of costs may be available and that Butler merely sought to find a solution preferable to both parties. See 1st 8/16/21 Email ("We can close under the current terms however, [sic] leaving the roof as is will only cost us both more in the long run."). CJ's argument on this point is insufficient to demonstrate that the executed contract lacked a "reasonabl[y] certain[]" purchase price as a matter of law. Perrill, 126 N.E.3d at 840.

Nor has CJ carried its burden of demonstrating that the remaining issues being negotiated by the parties were "essential terms." Butler's opposition letter was not a surprise list of unforeseen issues; rather, the contract explicitly contemplated that Butler would raise objections following its review of CJ's title and survey documents. See Contract at PageID.20 ("If Purchaser has any objections to the matters set forth in the Title Commitment, Title Policy, Exception Documents or the Updated Survey, Purchaser shall notify Seller in writing . . . ."). Issues relating to the easement appear non-essential, as Butler was willing to close without settling them, possibly looking to applicable law to resolve any remaining disputes. See 1st 8/16/21 Email. CJ has offered no authorities finding that comparable issues were essential to a written contract, and the Court declines to find that these open questions "negate[] mutual assent" to a purchase and sales

8

agreement negotiated by sophisticated parties. Ochoa, 641 N.E.2d at 1044. CJ has failed to establish that an absence of a meeting of the minds between the parties compels dismissal.

### C. Whether Butler Materially Breached the Contract[6]

CJ argues that Butler breached the contract, relieving CJ of any obligations. Mot. at 10 (citing Licocci, 492 N.E.2d 48). CJ notes that the inspection period ended on August 6, 2021, and Section 3.1 of the contract required that Butler pay an additional $50,000 in earnest money within one business day after the close of the inspection period. Id. Butler did not do so. Id. Butler argues that it did not breach the contract by failing to post the $50,000 deposit due under Section 3.1, noting that the deposit would be applied to the $4,200,000 purchase price, all of which Butler was prepared to pay at the August 16, 2021 closing. Resp. at 21–23.

CJ has failed to establish based on the pleadings that Butler committed a material breach of the contract. Factors that Indiana courts consider when determining whether a material breach has occurred include "[t]he extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated" and "[t]he extent to which the injured party may be adequately compensated in damages for lack of complete performance." Hussain v. Salin Bank & Tr. Co., 143 N.E.3d 322, 331 (Ind. Ct. App. 2020). The "substantial benefit" that CJ anticipated, and the injury for which CJ seeks compensation, is the payment of $50,000 by August 6, 2021. Section 3.2 of the contract establishes that this amount served as a deposit toward the total purchase price. Contract at PageID.19. Thus, if was Butler was willing—as it claims—to close on the scheduled closing date of August 16, 2021, then CJ would have received the amount due as a

---

[6] "A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." Licocci v. Cardinal Assocs., Inc., 492 N.E.2d 48, 52 (Ind. Ct. App. 1986). A material breach is one that "goes to the 'heart of the contract.'" State v. Int'l Bus. Machines Corp., 51 N.E.3d 150, 158–159 (Ind. 2016) (quoting Collins v. McKinney, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)). "Whether a breach is material is generally a question of fact to be decided by the trier of fact." Id. at 158 (punctuation modified, citation omitted).

deposit approximately ten days later than the amount was originally due. Resp. at 21. Based only on the pleadings, the Court declines to find that this non-payment constituted a breach that went "to the heart of the contract." Int'l Bus. Machines Corp., 51 N.E.3d at 158–159 (punctuation modified, citation omitted). The question of whether Butler's failure to tender $50,000 by the close of the inspection period was a material breach is a question of fact. Id. at 158. Due to this open question of fact, CJ cannot succeed on its pleadings-based motion to dismiss. See Hart, 973 F.3d at 643.

### D. Whether Butler Can Maintain Claims Based on the Mortgage

CJ observes that Butler alleged that CJ had obtained a "secret" mortgage on the property in July 2021, which would have prevented CJ from closing the sale of the property. Mot. at 10 (citing Compl. ¶¶ 39–40). CJ asserts that Butler is factually wrong on this point, as the mortgage is dated July 21, 2020. Id. at 11 (citing Mortgage). To the extent that Butler's claims are based on the mortgage recorded in 2020, those claims fail as a matter of law. A purchaser is presumed to have notice of a recorded mortgage. See Bank of New York v. Nally, 820 N.E.2d 644, 648 (Ind. 2005). Butler, as it now concedes, had constructive notice of the mortgage. See Resp. at 23. The Court, therefore, dismisses Butler's claim that CJ breached the contract based on the theory of "wrongly encumbering the Land with a commercial mortgage without Plaintiff's knowledge or consent." Compl. ¶ 61. Because Butler's breach claim asserts other bases, the claim is not dismissed in its entirety.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part CJ's motion to dismiss (Dkt. 8). Butler's claim that CJ breached the contract on the theory of wrongful encumbrance

without Plaintiff's knowledge or consent is dismissed. See Compl. ¶ 61. Butler's breach claim premised on other bases remains, as do the other claims.

Defendants must file an answer to the complaint within 14 days of this Opinion and Order. A telephonic scheduling conference will be convened on May 24, 2022 at 4:00 pm. The parties must file a discovery plan at least seven days before the conference, in accordance with the requirements that will be set out in a forthcoming notice for the conference.

SO ORDERED.

Dated: April 21, 2022                         s/Mark A. Goldsmith
       Detroit, Michigan                      MARK A. GOLDSMITH
                                              United States District Judge